ROME AND MODO v. STATE

[No. 30, September Term, 1964.]

(Two Appeals in One Record)

*Decided November 19, 1964.*

The cause was argued before HENDERSON, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*Morris Lee Kaplan,* with whom were *Michael Lee Kaplan* and *Leo V. Miller* on the brief, for the appellants.

*Roger D. Redden, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, William J. O'Donnell, State's Attorney for Baltimore City,* and *Charles E. Moylan, Jr., Deputy State's Attorney,* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court.

Albert Rome and Benjamin Modo were convicted of pandering and each was sentenced to five years in prison. At the same time, Rome was convicted of keeping a disorderly house and was given a concurrent sentence of six months.

In February 1963, Rome, the owner of a second-floor walk-

up restaurant on West Mulberry Street, and Modo, its manager, engaged a twenty year old girl to work as a prostitute in connection with the operation of the restaurant selling only sandwiches and Chinese food ordered from another restaurant. Normally the restaurant was open only between 2:00 a.m. and 6:00 a.m. six days a week—Tuesdays through Sundays. Although not licensed for the purpose, beer and other alcoholic beverages were also dispensed and consumed on the premises.

The arrangement between the contracting parties was that the girl should arrive at the restaurant at opening time and sit and wait at a table until called. Modo, or, when he was absent, Rome, would contact the customer, make the bargain and collect the fee ($20 for half an hour and $40 for an hour) in advance. The girl, after being introduced to the customer, would then go to the third floor of the restaurant building, or, in a cab hired by the manager or owner of the establishment, to the girl's apartment or that of the customer. When the agreed time had expired, the girl would reenter the waiting cab and return to the restaurant and wait for the next call. At quitting time, she would be paid her agreed fifty per cent of the fees received during the morning and be driven home.

Subsequently, Modo engaged the services of another twenty year old prostitute. She did not go to the restaurant, but stayed in her apartment to entertain the customers sent by Modo and Rome. Her earnings were delivered to her after the restaurant closed either by the manager or owner or the "boy friend" of the restaurant sitter. The division of fees was the same as those of the other girl.

The police, because of the odd business hours of the restaurant, immediately suspected the illicit sale of alcoholic beverages or some other violation of law and visited it frequently to observe what was going on. After the expiration of several months, a police sergeant, by the use of two police decoys, confirmed the fact that acts of prostitution were committed in the apartment of the stay-at-home sitter. As a result the police sergeant asked the defendants, as well as the girls and the men they lived with, to go to police headquarters for the purpose of talking with him. The police had no arrest warrants at the time, but no one objected to going. After the girls had told the police of their ac-

tivities while employed by the defendants and as to the serving and drinking of beer and liquor on the restaurant premises, all of the persons involved were arrested.

The preliminary hearing resulted in the dismissal of the defendants, but they were subsequently indicted by the Grand Jury along with the prostitutes and the consort of one of them. At the trial of the defendants, the other participants (all of whom had been given immunity) were used by the State as witnesses against the defendants. Toward the end of the trial, the court inadvertently announced the verdict before counsel had finally ascertained whether the defendants desired to testify. After the dismissal of the motions for a new trial, the defendants were sentenced without counsel being present.

On appeal, both Rome and Modo contend: (i) that their arrest was illegal; (ii) that the verdicts were against the weight of the evidence; (iii) that the trial court erred in refusing to grant the motions for acquittal; (iv) that the court demonstrated prejudice and bias by its finding of guilt before the defendants had an opportunity to finish presenting their defense; and (v) that the court further evidenced prejudice and erred in sentencing the defendants when counsel was not present.

### (i), (ii) and (iii)

Since the initial detention of the defendants was not improper and there was sufficient probative evidence to sustain the convictions, the refusal of the trial court to grant the motions for acquittal was proper.

The only evidence concerning the detention was to the effect that the defendants, at the request of the police and without any assertion of coercion, voluntarily accompanied the police to headquarters for the purpose of being questioned, and no effort was made to rebut such evidence. A detention under such circumstances would not amount to an arrest. See *Cornish v. State*, 215 Md. 64, 137 A. 2d 170 (1957) ; *Kauffman, The Law of Arrest in Maryland*, 5 Md. L. Rev. 125, 131. In any event, even if the taking of the defendants to the police station without a warrant could be said to have constituted an arrest, it turned out to be a harmless circumstance since the defendants were not thereby induced to reveal any incriminating evidence

against themselves. Clearly, the defendants were not in any way prejudiced by the action of the police.

On the other hand, the uncontradicted testimony of the prostitutes concerning the pandering charges, to the effect that the defendants had acted as procurers for them at the restaurant, had conducted all negotiations with prospective customers, had collected the stipulated fees and had divided the fees as agreed, was clearly sufficient, if believed, to convict both Rome and Modo of the offenses with which they were charged. Cf. *Mazer v. State,* 231 Md. 40, 188 A. 2d 552 (1963). Furthermore, the testimony of the prosecuting witnesses, since they were not accomplices, needed no corroboration. *Mazer v. State, supra.* See also *Seidman v. State,* 230 Md. 305, 187 A. 2d 109 (1962), *cert. den.* 374 U. S. 807 (1963). Even if it is assumed, with respect to the charge of keeping a disorderly house, that the restaurant-sitting prostitute was an accomplice of Rome, her testimony that alcoholic beverages were available to customers of the restaurant was corroborated by her "boy friend" (who had overheard instructions to pour the "beer, whiskey and stuff" down the kitchen sink whenever the police came in) as well as by the police sergeant (who had smelled the odor of alcohol coming from the sink every time he visited the restaurant). Aside from the maintenance or operation of a place as a bawdy-house, "a house is disorderly if kept as a place where [other] acts prohibited by statute are habitually indulged in or permitted." *Curley v. State,* 215 Md. 382, 390, 137 A. 2d 640 (1958).

(iv)

Although the defendants had not then decided whether or not they would testify in their own behalf, the untimely announcement of the verdict was not prejudicial.

The record discloses that the State concluded its case by the end of the first day of trial and that the court, after argument by counsel for the defendants, denied the motions for acquittal. On the following day, the defendants, having no other witnesses, renewed their motion for acquittal and after further arguments by counsel for the defendants as well as the State, the motions for acquittal were again denied. Later, however, when it was shown that certain named police officers subpoenaed by the de-

fendants had been returned non est, the court suggested the making of a proffer and the defendants complied. The proffer was to the effect that if the officers were present they would testify that they had visited the restaurant three or four times a night over a period of three or four months and had not seen the prosecuting witnesses there or observed any meetings between women and men or any other improper activities on the restaurant premises. The State, in stipulating that the proffer was correct, added that the officers were always in uniform. At this point, since neither the defendants nor the State expressed a desire to argue the case further, the court announced a verdict of guilty as to each defendant and inquired of counsel if they were ready for sentence. But when counsel asked the court for time to confer with his clients as to whether they wanted to testify or not, permission was granted and an off-the-record discussion ensued between counsel and clients. Thereafter, counsel made a statement for the record to the effect that he had explained to his clients on this and other occasions that they had a right to testify or to remain silent and the consequences of their testifying as well as not testifying, after which each defendant stated that he preferred not to testify. No request was made for an opportunity to further argue the case, and the court reinstated its verdicts of guilty but deferred sentencing the defendants pending the filing of motions for a new trial. The situation here was not, as the defendants contend, the same as in *Yopps v. State*, 228 Md. 204, 178 A. 2d 879 (1962). There, it was held that the denial of an opportunity to argue the case before returning a verdict of guilty was prejudicial to the right of the accused to be represented by counsel throughout the trial. Here, where only negative evidence was offered after the motions for acquittal had been argued twice and defense counsel made no request to argue the case further, obviously because it would have been needless repetition, the reinstatement of the verdicts of guilty after each of the defendants personally declined to testify in his own behalf, was not prejudicial, and we so hold.

(v)

However, since we think that the imposition of a sentence can be, and was in this case, a crucial stage of a criminal pro-

ceeding, we hold that the defendants should not have been sentenced in the absence of counsel to speak for them.

Although motions for new trials had been duly filed, they were dismissed because new counsel the defendants had employed and paid to represent them at the hearing of the motions failed to seasonably file memorandums in their behalf. And when the defendants were brought in to be sentenced, the court, despite the fact it was informed that they had been led to believe they had counsel, proceeded to sentence them without affording them an opportunity to obtain such counsel or appointing new counsel to represent them. This was improper under the circumstances. Since Maryland Rule 761 a provides in pertinent part that the trial court, before imposing sentence, shall afford a defendant or his counsel an opportunity to be heard and to present information in mitigation of punishment, we think it is implicit that where a defendant had counsel (as was the case here) he should also have been present when sentence was imposed on the defendant.

For the reasons stated the judgment of conviction will be affirmed but the sentence will be vacated and the case remanded for reimposition of sentence at a time when counsel (employed by defendants or appointed by the court) shall be present to advise the defendants.

*Judgments of conviction affirmed; sentence vacated and case remanded for reimposition of sentence in accord with this opinion. Costs to be paid by the appellants.*