JAMES LEON CRUMB *v.* STATE OF MARYLAND

[No. 29, Initial Term, 1967.]

*Decided March 14, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH and THOMPSON, JJ., and DYER, J., Associate Judge of the Third Judicial Circuit, specially assigned.

*Frank G. Perrin,* with whom was *Gordon R. Moreland* on the brief, for appellant.

*Thomas Perkins, Assistant Attorney General,* with whom were *Thomas B. Finan, former Attorney General,* and *John C. Hancock, State's Attorney for Charles County,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

The appellant, James Leon Crumb, together with four others, was indicted in the Circuit Court for Charles County on a six count indictment charging the five men with armed robbery, attempt to commit armed robbery, assault and battery, larceny, and receiving stolen goods. He was tried separately, pleaded not guilty, and elected to be tried by the court, sitting without a jury. He was found guilty on the first count of the indictment, armed robbery, and sentenced to eighteen years in the Maryland Penitentiary.

This appeal is from the judgment entered and sentence imposed.

In the early morning hours of September 2, 1965, the Sunoco station located on Route 301, La Plata, Maryland, was the

scene of an armed robbery. The attendant Kenneth Chaplin, testified that about 2:00 a.m. a 1961 Oldsmobile convertible with District tags stopped at the station. The driver asked for a dollar's worth of gas and, as he (Chaplin) was putting in the gas, three of the men got out of the vehicle and entered the station. One of the remaining two men in the vehicle asked him for change for a one dollar bill. He (Chaplin) entered the station, went around to the desk and opened the cash drawer. As he did so, one of the three men who had entered the station pulled a gun on him. He then testified that the other two men emptied the cash drawer, getting between $100 and $105 in bills and some change and grabbed his radio. The man with the gun asked for the key to the rest room, took him around to the rest room, told him to lie down, and beat him with the pistol. He heard the automobile leaving the gas station heading north on Route 301 and identified the vehicle by complete description to Trooper Alexander, who came on the scene almost immediately after the crime.

Trooper Alexander, a Maryland State Trooper, testified that he was on duty patrolling Route 301 between Waldorf and La Plata the night of the crime. He had passed the Sunoco station twice; the second time he was concerned by the fact that he could see Chaplin nowhere about the station, but he did see the Oldsmobile at the gas pump and saw it leave on Route 301 as he was crossing from the south bound into the north bound lane. He entered the gas station to investigate, found Chaplin with blood streaming down his face, heard Chaplin's story, and immediately radioed a lookout for the car. Chaplin told him he could identify the man that struck him.

Following the lookout given over the radio by Alexander, the Oldsmobile was spotted and pursuit took place, in which from six to eight police cruisers were involved at speeds ranging from 90 to 105 miles per hour. During the chase the Oldsmobile collided with a mail truck and all five occupants, including the appellant, were apprehended. They were handcuffed, searched and then taken to the Prince George's County Hospital for treatment. Later, three of the men, including the appellant, were removed from the hospital to the State Police barracks where appellant was questioned and then removed to the

La Plata jail. While in the hospital warrants for their arrest for armed robbery were served on them by Trooper Alexander, who had obtained the necessary information from Trooper Summers. Officer Mossburg, Trooper Summers and Trooper Ansell all testified for the State at the trial. Mossburg and Summers had been at the scene of the apprehension and Ansell first saw appellant at the hospital.

At the conclusion of the evidence offered by the State, the defendant moved for a judgment of acquittal and the motion was denied. The appellant then took the stand in his own defense. He denied any participation in the robbery, but admitted that he was at the scene of the crime and remained in the vehicle when the three men entered the filling station. He did testify that he had asked Chaplin to bring him change for a dollar. He further testified that after the State Trooper gave chase he threw the gun and the radio out of the window of the car. His testimony as to the interrogation by Trooper Ansell and the statement which he gave to Trooper Ansell closely paralleled the Trooper's testimony. At the close of the whole case, he renewed the motion for acquittal, which was overruled and he was found guilty by the lower court.

The appellant raises four questions on appeal:

1) Was appellant illegally convicted as the result of an unfair and unreliable identification made by the robbery victim?

2) Was the appellant illegally convicted because he was denied his rights under State and Federal Constitutions when he was not furnished with counsel at the preliminary hearing and the events that transpired there prejudiced his ensuing trial?

3) Was the appellant illegally convicted as a result of statements and/or a confession made to the police after a prolonged period of questioning, and in the absence of counsel, in violation of his rights under the State and Federal Constitutions?

4) Was the appellant illegally convicted as a result of an illegal search and/or statements illegally obtained by the police?

Appellant first contends that his identification by the robbery victim was so unfair and unreliable that it violates the rights and due process of the appellant. He bases his argument in this respect on his claim that immediately prior to the preliminary hearing he was virtually pointed out to the victim by the police. The record discloses that this is not correct. Chaplin had been asked to stand by a window in the courthouse and see if he could identify any of the three men that were brought over from the jail to the courthouse for the preliminary hearing. He was able to identify the appellant and one of the other men, but was unable to identify the third man. Afterwards, at the preliminary hearing, he identified the appellant as the man that struck him with the gun, and also identified one of the other two men as being at the scene of the robbery. There is nothing to indicate in any of the testimony that the appellant was pointed out to him prior to the preliminary hearing or at the preliminary hearing, and there is no evidence of any unfairness or unreliability pertaining to his positive identification of the appellant at the trial or at the preliminary hearing. Where there is no unfairness, extrajudicial identifications are admissible in this State. *Proctor v. State,* 223 Md. 394, 164 A. 2d 708 (1960); *Johnson v. State,* 237 Md. 283, 206 A. 2d 138 (1965). Furthermore, the victim, Chaplin, as previously stated, made a positive identification of the appellant at the trial as the man who struck him with the gun. Appellant argues that because the victim could not describe the features of the appellant to the Trooper immediately after the robbery doubt is cast on his ability to identify him at the trial. However, he at that time had just suffered serious head injuries which necessitated his hospitalization. The weight to be given to his courtroom identification of the defendant by the victim was for the trial court to determine. *Watkins v. State,* 237 Md. 357, 206 A. 2d 568 (1965); *Hicks v. State,* 225 Md. 560, 171 A. 2d 722 (1961). The identification of an accused by a single eye-witness has often been held sufficient to sustain a conviction. *Coates v. State,* 232 Md. 72, 191 A. 2d 579 (1963); *Booth v. State,* 225 Md. 71, 169 A. 2d 388 (1961).

The appellant's second contention is that he was illegally convicted because he was not furnished counsel at the preliminary

hearing and the events that transpired there prejudiced his ensuing trial. It is true that the appellant was not furnished with counsel at the preliminary hearing. However, he was not required to plead, and, apparently, the only testimony offered was that of the complaining witness, who identified the defendant and he was then held for the action of the Grand Jury. In an attempt to support his claim that he was prejudiced by lack of counsel at the preliminary hearing, he alleges that he was not allowed to question the robbery victim concerning his identity after having been virtually pointed out to the robbery victim by the police at the preliminary hearing. There is nothing in the record to disclose this to be true, nor was there anything that transpired at the preliminary hearing which could be said to deprive him of any of his constitutional rights. A preliminary hearing under Maryland law is not of itself a critical stage in the judicial process. *De Toro v. Pepersack*, 332 F. 2d 341, cert. denied, 379 U. S. 909 (1964). Therefore, except in the most unusual circumstances, counsel is not required for defendants at preliminary hearings. *De Toro v. Pepersack, supra.* In *White v. Maryland*, 373 U. S. 59 (1963), the preliminary hearing was held to be a critical stage because White's plea of guilty taken at the preliminary hearing and subsequently withdrawn was introduced into evidence against him during the trial. In the instant case, a guilty plea was not entered by appellant Crumb at his preliminary hearing, nor does the record indicate that any other action of the appellant at the preliminary hearing was used against him at the trial. Therefore, the *White* case is not applicable here. We find that the preliminary hearing in the instant case was not a critical stage of the proceedings, and the appellant was deprived of no constitutional rights. *Mercer v. State*, 237 Md. 479, 206 A. 2d 797 (1965); *Evans v. Warden*, 240 Md. 333, 214 A. 2d 144 (1965).

We will take up the appellant's third and fourth contentions together. Here, he claims that statements obtained from him after a prolonged period of questioning in the absence of counsel was either coercive or violative of the right of due process, and in violation of the 6th Amendment to the Federal Constitution. However, nothing like that took place. The record discloses that the appellant was questioned by Trooper Ansell at

the Waldorf Police Barracks over a period of approximately fifteen minutes around 7:30 a.m. on the morning of the robbery. No threats, promises or inducements were made to him then or prior thereto, and he was told that he did not have to tell the Trooper anything. The appellant freely admitted on the stand at the trial that he had been advised of his constitutional rights. He made no confession and no confession was offered by the State at the trial. He did admit that he had been in the motor vehicle at the scene of the crime; denied that he had hit the victim; and stated that someone else had struck him. When asked about the gun, he stated that the gun was given to him to throw out of the window when they were being pursued by the police. His own testimony on the stand was to the same effect as the statement he gave Trooper Ansell. Under the circumstances, appellant's statement to the Trooper was properly admitted. *Anderson v. State*, 237 Md. 45, 205 A. 2d 281 (1964).

Appellant further contends in his third argument that the State was required to advise him of his right to counsel prior to the post-arrest interrogation by Trooper Ansell. Although appellant was not so advised, the record clearly indicates that appellant never requested that counsel be furnished. Further, appellant admitted on the stand that he was advised by the Trooper that anything he said could be used against him. Appellant's argument necessarily involves a consideration of three landmark cases recently decided by the Supreme Court: *Escobedo v. Illinois*, 378 U. S. 478, 12 L. Ed. 2d 977 (June 22, 1964); *Miranda v. Arizona*, 384 U. S. 436, 16 L. Ed. 2d 694, 722 (June 13, 1966); *Johnson v. New Jersey*, 384 U. S. 719, 16 L. Ed. 2d 882. Since these decisions, the Court of Appeals of Maryland has held that where defendant failed to request counsel, he was not within ambit of *Escobedo v. Illinois, supra,* and since *Miranda v. Arizona, supra,* applies only to trials not begun as of June 13, 1966, *Miranda* guidelines did not apply to trials begun before that date. *Westfall v. State,* 243 Md. 413, 221 A. 2d 646 (July 19, 1966); *Campbell v. State,* 244 Md. 363 (November 11, 1966). In *Campbell v. State, supra,* at page 366, the Court of Appeals said:

> "*Escobedo* made a confession inadmissible even though it was in fact voluntary if it was made after a lawyer

had been requested and the request denied. *Miranda v. Arizona,* 384 U. S. 436, 16 L. Ed. 2d 694, 722 (June 13, 1966), extended *Escobedo* to a holding that 'an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation * * *. As with the warnings of the right to remain silent and that anything stated can be used in evidence against him, this warning is an absolute prerequisite to interrogation' (persons not in custody or under restraint may be questioned, and volunteered statements or 'blurts' are admissible).

"In *Johnson v. New Jersey,* 384 U. S. 719, 16 L. Ed. 2d 882, 892, 893, the Supreme Court held that the rules of *Escobedo* and *Miranda* were not to be applied retroactively, the *Escobedo* holding being 'available only to persons whose trials began after June 22, 1964, the date on which *Escobedo* was decided,' and the extended *Miranda* guidelines being 'available only to persons whose trials had not begun as of June 13, 1966' (the date *Miranda* was decided).

"By reason of his failure to request counsel, appellant cannot bring himself under *Escobedo; Mefford and Blackburn v. State,* 235 Md. 497, *cert. denied,* 380 U. S. 937, and *Johnson v. New Jersey, supra;* and the *Miranda* guidelines do not·apply to him since he was tried in 1965."

Therefore, since appellant was tried and convicted and sentenced on December 13, 1965, *Miranda* would not apply, and since there is no evidence that a request for a lawyer was made *Escobedo* does not control and the statement given by the appellant is admissible.

In his final contention, the appellant contends that he was illegally searched without a warrant and without being legally arrested and cites *Mapp v. Ohio,* 367 U. S. 643, 6 L. Ed. 1081 (1961). There is no basis to the appellant's argument. It is true that at the time of the apprehension of the five occupants of the Oldsmobile in question following its collision with the mail truck, they were handcuffed and searched for weapons. There was testimony that one hundred dollars in bills was found

upon Johnson, one of the occupants, and later at the hospital some change was found upon the appellant. However, nothing found as a result of any search was offered in evidence at the trial. At the time the appellant and other occupants of the wrecked Oldsmobile were taken into custody, the police officers had probable cause to believe that a felony had been committed, since they were aware of the robbery that had taken place and the description of the automobile as a result of the lookout put out over the radio. An arrest for a felony, such as armed robbery, may be made upon sufficient probable cause, and the officer may as an incident to an arrest search the person of the suspect. A police officer, in order to arrest in a felony case without a warrant, must have reasonable grounds or probable cause to believe at the time of the arrest that a felony had been committed and that the person arrested had committed the offense. *McChan v. State,* 238 Md. 149, 207 A. 2d 632 (1965) ; *Murray v. State,* 236 Md. 375, 203 A. 2d 908 (1964). In *Mulcahy v. State,* 221 Md. 413, 422, 158 A. 2d 80 (1960), the Court of Appeals stated, quoting from an earlier case:

> "* * * 'probable cause exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.' "

The fact that the warrant was not served upon the appellant until he was taken to the hospital would have no bearing on his arrest, since he was taken into custody immediately after the vehicle in which he was riding collided with the mail truck.

Also, the Troopers were empowered to make an arrest without a warrant for the misdemeanors committed in their presence, namely, the serious motor vehicle violations connected with the attempted escape. Search of the occupants of the motor vehicle resulting therefrom was also perfectly proper for this additional reason. *Braxton v. State,* 234 Md. 1, 197 A. 2d 841 (1965).

We find no merit to any of the appellant's contentions and the judgment of the lower court will be affirmed.

*Judgment affirmed.*