# CHARLES JAMES REEVES *v.* STATE OF MARYLAND

[No. 24, September Term, 1967.)

196

*Decided February 19, 1968.*

The cause was argued before Anderson, Morton, Orth, and Thompson, JJ.

*Morton P. Fisher, Jr.,* for appellant.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Charles E. Moylan, Jr., State's Attorney for Baltimore City,* on the brief, for appellee.

Morton, J., delivered the opinion of the Court.

The Appellant, Charles James Reeves, was convicted of rape, without capital punishment, by a jury in the Criminal Court of Baltimore on April 27, 1966. This was Reeves' second trial and conviction, his first conviction having been vitiated as a result of Habeas Corpus proceedings in the United States Fourth Circuit Court of Appeals. (See *Reeves v. Warden,* 346 F. 2d 915). In his first trial, Reeves had been convicted of rape [1] and sentenced to life imprisonment. In his second trial,

---

1. This conviction was affirmed on appeal. *Reeves v. State,* 224 Md. 436, Cert. Den., 368 U. S. 865. Post Conviction relief was denied on November 5, 1962, and Application for Leave to Appeal

198

the presiding judge sentenced him on June 10, 1966, to twenty years imprisonment (the maximum allowed by the statute under the jury's verdict) but no credit was allowed for the prison time served by Reeves under the first sentence, namely, from April 8, 1960 to the date of his second sentencing.

The record indicates that on July 24, 1959, shortly after midnight, the Baltimore Police received a complaint from the prosecuting witness that she had been raped by a Negro male in her apartment located on Charles Street in the City of Baltimore. She told the police, and testified at the trial, that her attacker held a broken Vodka bottle to her throat, forced her to bed and attacked her. She escaped some forty-five minutes later, and as she ran down the stairs, the Vodka bottle was thrown at her, breaking on the stairs. The police arrived at the scene within minutes and, after questioning, sent her to be examined by a doctor.

The next morning she was shown a number of photographs by the police and identified Reeves as the man who had attacked her. Reeves was then arrested at his sister's home, without a warrant, placed in a lineup and again identified by the victim.

1.

In this appeal, it is first contended by Reeves that his rights were violated by the admission of testimony of the victim and the police relating to identifications made at the lineup and at a subsequent confrontation with the victim during which Reeves was required to speak, it appearing that she had purposely engaged her attacker in conversation so that later she could identify him. It is contended that the failure of the police to advise the Appellant of his right to counsel and his right to remain silent made the pretrial identifications illegal; that subsequent identifications at trial were tainted; and that all testimony relating thereto was inadmissible.

was denied on March 13, 1963. *Reeves v. Warden*, 231 Md. 613. His Petition for a Writ of Habeas Corpus was denied by Judge Thomsen on March 5, 1964, 226 F. Supp. 593. This decision was reversed on appeal to the U. S. Fourth Circuit Court of Appeals on the ground that a note found in Reeves' bureau drawer partially describing his whereabouts on the day of the crime was improperly admitted. 346 F. 2d 915.

In support of this contention, reliance is placed upon the holdings in *Wade v. United States,* 358 F. 2d 557 (5th Cir. 1966) and *People v. Gilbert,* 408 P. 2d 365 (Calif. 1965), the decisions of the Supreme Court of the United States in *United States v. Wade,* 388 U. S. 218, and *Gilbert v. California,* 388 U. S. 263, not having been announced at the time Appellant's Brief was filed. Appellant's reliance on *Wade* and *Gilbert* is, however, misplaced.

It is true that the Supreme Court in *Wade* and *Gilbert* held that "a post indictment pre-trial lineup at which the accused is exhibited to identifying witnesses is a critical stage of the criminal prosecution; that police conduct of such a lineup without notice to and in the absence of his counsel denies the accused his Sixth Amendment right to counsel and calls in question the admissibility at trial of the in-court identifications of the accused by witnesses who attended the lineup." *Gilbert, supra,* p. 272. However, in *Stovall v. Denno,* 388 U. S. 293, the Court specifically held "that Wade and Gilbert affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel after this date [June 12, 1967]". Thus, the new standards governing the conduct by the police of an identification lineup are not available to Reeves. *Tender v. State,* 2 Md. App. 692. In this State, at the time of Reeves' lineup, evidence of an extra-judicial lineup was admissible if conducted under conditions of fairness and reliability; and the absence of counsel at such lineup did not, *per se,* create a condition of unfairness or unreliability. *Johnson v. State,* 237 Md. 283, 289; *Proctor v. State,* 223 Md. 394. *Nadolski v. State,* 1 Md. App. 304; *Crumb v. State,* 1 Md. App. 98. There has been no showing by the Appellant that his lineup identification was otherwise conducted under conditions of unfairness or unreliability.

The Appellant's assertion that his Fifth Amendment rights were violated when he was required to utter certain words as a part of the lineup procedure and the confrontation is without merit. In *Wade, supra,* the Supreme Court said:

"* * * compelling Wade to speak within hearing distance of the witnesses, even to utter words purportedly

uttered by the robber, was not compulsion to utter statements of a 'testimonial' nature; he was required to use his voice as an identifying physical characteristic, not to speak his guilt. We held in *Schmerber, supra,* at 761, that the distinction to be drawn under the Fifth Amendment privilege against self-incrimination is one between an accused's 'communications' in whatever form, vocal or physical, and 'compulsion which makes a suspect or accused the source of ' "real or physical evidence," ' *Schmerber, supra,* at 764. We recognized that 'both federal and state courts have usually held that * * * [the privilege] offers no protection against compulsion to submit to fingerprinting, photography, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture.' *Id.,* at 764. None of these activities becomes testimonial within the scope of the privilege because required of the accused in a pre-trial lineup."

### 2.

The Appellant next contends that certain statements made by him to the police officers regarding his whereabouts at the time of the commission of the crime and introduced in rebuttal were, *per se,* involuntary because the statements were obtained without advising him of his right to counsel and were elicited as fruits of an illegal arrest. He cites the holdings in *Escobedo v. Illinois,* 378 U. S. 478 and *Miranda v. Arizona,* 384 U. S. 436, in support of his contention that the statements were involuntary, *per se. Escobedo,* however, has no application since there is no showing that Reeves requested and was denied counsel prior to making the statements; nor is Reeves within the reach of *Miranda* since his trial was begun prior to June 13, 1966, its effective date. *Carrington v. State,* 1 Md. App. 353, 357. There is no showing that the statements were otherwise involuntary and, accordingly, there was no error in their admission.

Likewise, the statements were not rendered inadmissible even assuming the arrest was illegal, since they were not the fruits

of an unreasonable search. *Nadolski v. State,* 1 Md. App. 304; *Howard v. State,* 1 Md. App. 379; *Fisher v. State,* 1 Md. App. 505. The Appellant's reliance on *Wong Sun v. United States,* 371 U. S. 471 is misplaced since that case "does not control prosecutions in State courts * * *." *Crowe and Williston v. State,* 240 Md. 144.

### 3.

The Appellant also contends that the trial judge committed prejudicial error in advising the jury during the course of his instructions that it had "a certain prerogative not normally enjoyed by a criminal jury," indicating that in the event of a guilty verdict it could prevent the imposition of the death sentence by accompanying its verdict with the words "without capital punishment." He argues "that thinking it had control over punishment, the jury was more likely to bring in the compromise verdict of guilty, without capital punishment, and that the defendant's chances for acquittal were gravely prejudiced." We find this contention to be without merit. The trial judge included in his instructions a clear admonition that "the imposition of sentence is purely within the province of the trial judge." In *Shoemaker v. State,* 228 Md. 462, cited by the Appellant, references by the State's Attorney in closing argument were condemned by the Court of Appeals since "the jurors 'were likely to have been * * * influenced to the prejudice of the accused.' " The facts and rationale of that case, in our opinion, are inapposite here.

Also we find no merit in the contention that the trial court's instruction that "the jury is judge of the law [as well as of the facts] was in violation of the defendant's rights under the United States Constitution." The Court of Appeals of Maryland and this Court have ruled many times that this contention is without merit. See *Giles v. Maryland,* 229 Md. 370, appeal dism. 372 U. S. 767; *Avey v. State,* 1 Md. App. 178, 187; *Lewis v. State,* 2 Md. App. 678.

### 4.

The Appellant next complains that the trial judge committed prejudicial error in refusing to permit testimony offered by the Appellant which would have shown that clothes taken from the

person of the Appellant and from his home were tested for semen stains and subjected to spectograpic analysis against paint and dirt scrapings taken from the fire escape leading to the prosecuting witness' apartment with negative results. However, there was no positive evidence offered by the State or by the Appellant that the clothes subjected to the test were clothes worn by the Appellant on the evening of the crime. Since negative evidence is admissible only to contradict positive evidence on the other side, the trial judge properly excluded the proffered testimony relating to the negative results of the test. Underhill, *Criminal Evidence,* Vol. 1, Sec. 9 (5th Ed.).

5.

The Appellant filed a Motion for a Mistrial after a State's witness had made reference to "the other trial" and contends that its denial by the trial judge constituted reversible error. We do not agree. The trial judge immediately directed the jurors to "disregard that remark." In *Cook v. State,* 225 Md. 603, the Court of Appeals of Maryland stated: "This Court has stated that the trial court is in an advantageous position to judge the question of prejudice and its decision with reference thereto should not be reversed unless it is clear that there was prejudice." See also *Avey v. State,* 1 Md. App. 178, 188. We are not persuaded that the remark constituted clear prejudice and, accordingly, the refusal to grant a mistrial was not reversible error.

6.

Finally, it is contended that the imposition of the maximum sentence authorized by the statute (Md. Code, 1967 Repl. Vol., Art. 27, Sec. 463), without allowing credit for the period of years the Appellant has served under the first sentence, is violative of his Constitutional rights and the mandate of the Legislature. This contention has substantial merit.

The Court of Appeals of Maryland has consistently held that the imposition of a sentence at the second trial which results in a greater period of confinement than called for in the sentence imposed at the first trial is not unlawful. *Hobbs v. State,* 231 Md. 533; *Moulden v. State,* 217 Md. 351. More recently, this Court in *Moon v. State,* 1 Md. App. 569, followed the views

expressed in *Hobbs, supra,* and approved a sentence of twenty years for armed robbery which was imposed in a second trial where the first trial, which had resulted in a sentence of twelve years, had been set aside under *Schowgurow v. State,* 240 Md. 121. We recognized in *Moon* that the United States First Circuit Court of Appeals in *Marano v. United States,* 374 F. 2d 583 and the Fourth Circuit Court of Appeals in *Patton v. North Carolina,*[2] 381 F. 2d 636, had held that a harsher sentence upon retrial was unconstitutional; although the Third Circuit in *Starner v. Russell,*[3] 378 F. 2d 808, held to the contrary. We decided, however, to "continue to follow the rule as laid down in the Maryland cases, especially where, as here, the indictment has been declared void, as opposed to a new trial under the same indictment after reversal." [4]

In *Moon,* as here, the twenty year sentence imposed on retrial was the maximum allowed under the statute (Md. Code, 1967 Repl. Vol., Art. 27, Sec. 488). Credit, however, was given Moon for all the time he had served in jail following his arrest. Thus, the case at bar reaches us in a different factual posture than *Moon,* for, by giving no credit for the time Reeves had spent in jail under the first sentence, the lower court, by imposing the maximum sentence in the second case, in effect, sentenced him to serve twenty six years in the face of a statute which limits the sentence to twenty years.

It is true that the Court of Appeals and this Court have reasoned that the granting of a new trial, whether because of a defective indictment or because of error in the first trial results in a *de novo* proceeding, and the lower court, on retrial, "hears the case as if it were being tried for the first time, and considers the entire matters of verdict, judgment and sentence as if there had been no prior trial." *Hobbs, supra.* But this theory or fiction does not obliterate the hard fact, present in this

---

2. Cert. Den. 390 U. S. 905, 19 L. Ed. 2d 871 (1968).
3. Cert. Den. 389 U. S. 889.
4. Van Alstyne, In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant, 74 Yale L. J. 606 (1965):
   "Harsher sentences following reconviction of successful Appellants are permissible throughout the federal courts and in the vast majority of the states."

case, that if the sentence here imposed is allowed to stand, Reeves could be forced to serve twenty six years in prison for the commission of a crime which carries with it a maximum sentence of twenty years. It is no answer, in our opinion, to assert that corrective action may be taken by the State Department of Parole and Probation; or that he is fortunate, in any event, since he will not be compelled to serve the life sentence originally imposed. While it is true that this Court has in *Moon,* approved, in a sense, the philosophy expressed by the Court of Appeals in *Hobbs,* that "in asking for and receiving a new trial, Appellant must accept the hazards as well as the benefits resulting therefrom." But such a philosophy does not countenance derogation of an accused's rights under the Maryland Constitution or sanction non-compliance with a Legislative mandate. We think that the failure to give Reeves credit for the time served under his first sentence would be violative of Art. 25 of the Maryland Declaration of Rights, and contrary to Md. Code, 1967 Repl. Vol., Art. 27, Sec. 463.[5]

In all the Maryland cases dealing with the imposition of harsher second sentences, whether by the trial courts in appeals from courts of limited jurisdiction or on retrial, there is a consistent thread of expressions that "the Court could have modified it or changed it, or enlarged it *within the limits provided by the statute." Hite v. State,* 198 Md. 602; *Moulden, supra.* Likewise, it has been consistently held that the imposition of a sentence *"within the statutory limit* does not amount to a cruel and unusual punishment." *Fisher v. State,* 1 Md. App. 505; *Charles v. State,* 1 Md. App. 222. Thus, the limiting factor is clear—a sentence must be imposed within the statutory limit and to say that because, as here, the second sentence, *per se,* did not exceed the maximum, is to take a myopic view of its results, which we cannot accept if fundamental fairness is to prevail. We hold, therefore, that Reeves is entitled to credit on his second sentence for the time he has served

---

5. This conclusion is to be distinguished from our holding in *Williams v. State,* 2 Md. App. 170, where, in the circumstances of that case, we held that the sentencing judge was not required to give credit for time spent in jail pending a trial and prior to sentencing.

since the imposition of his original sentence. Accordingly, the case will be remanded for the purpose of amending the sentence in accordance with the views here expressed.

> *Case remanded for amendment of sentence in accordance with this opinion; judgment otherwise affirmed.*