## WILLIAM HENRY SPEAKS *v.* STATE OF MARYLAND

[No. 42, September Term, 1967.]

*Decided March 18, 1968.*

The cause was submitted to MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*James W. McAllister* for appellant.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Charles E. Moylan, Jr., State's Attorney for Baltimore City,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

Appellant, William Henry Speaks, was tried in the Criminal Court of Baltimore before Judge Joseph R. Byrnes, sitting with-

out a jury, on November 17, 1966, and was found guilty of maintaining a disorderly house and allied counts, possession of narcotics and allied counts, and pandering and allied counts. Appellant was sentenced to one year, five years, and five years, respectively, to be served consecutively, for a total of eleven years in the Maryland House of Correction.

Appellant's sole contention raised on this appeal is that there was insufficient evidence to sustain the conviction.

On July 23, 1966, Officer James Hooper and three other officers of the Baltimore City Police Department went to 2353 Eutaw Place to investigate a complaint of a "disorderly house." Officer Hooper had in his possession fifty dollars in prerecorded currency. Upon arrival, he rang the first floor doorbell, captioned by the name "Speaks," and was then admitted to the premises by one Helen Harper. Officer Hooper and Miss Harper proceeded to enter into a transaction for the purpose of sexual relations. Miss Harper evaluated her services at twenty-five dollars, accepted that amount and left the bedroom, returning shortly thereafter unclothed and without the twenty-five dollars. Miss Harper then assumed a compromising position upon the bed in preparation of rendering her service when Officer Hooper identified himself as a police officer and arrested her. At that point, Miss Harper yelled, "Mickey, it's the cops." Officer Hooper than called for assistance shouting, "they are getting away."

Officer Plitt observed two females attempting to leave the premises at the rear but upon seeing him they re-entered.

Officers Plitt and Woingust and Sergeant Shanahan responded to Officer Hooper's call and entered the premises to render assistance.

A search ensued which uncovered two additional females but failed to reveal the whereabouts of the twenty-five dollars. However, two glassine bags were found by Officer Plitt while searching for the money. The officers believed the bags contained heroin hydrochloride. This belief was confirmed by a field test which revealed that the bags contained narcotics.

When questioned about the whereabouts of the money, Miss Harper stated that she had given it to "Phyllis" and that "Phyllis" had then left. Based upon their personal observation of the

premises, the officers knew that this was a patent falsehood, as no one had left subsequent to Officer Hooper's entry.

Having been called when the glassine bags and contents were discovered, the Narcotics Squad arrived causing an end to the interrogation of Miss Harper. Officer Pennington and Sergeant Wineke of the Narcotics Squad were informed as to what had transpired and then undertook a search of the premises, which ferreted out the appellant hidden in a closet in the middle bedroom, clutching a golf bag containing the sought after marked money along with $923.00 in cash and 35 glassine bags containing what was believed, and subsequently proved, to be heroin hydrochloride. In addition thereto, a black bag containing other narcotic drugs, paraphernalia, cutting agents and strainers and a blue suitcase containing suspected cocaine, 6,000 glassine bags, rubber bands, and a bottle believed to contain barbituates were discovered. Analysis revealed the contents to be heroin hydrochloride, dolophine, and morphine. An evaluation of the aforementioned items was estimated at $60,000.00.

When accosted, the appellant responded to the statement by Sergeant Shanahan "there is money in there" in reference to the contents of the golf bag, by stating "that is my money in there."

Throughout the proceedings, the appellant objected to the admissibility of all the evidence on the grounds of an illegal search and seizure.

Appellant did not offer evidence but made Motions for Judgments of Acquittal, which were denied and guilty verdicts were returned on all counts. A Motion for a New Trial was made and denied.

Appellant contends that the search and seizure was illegal. In the instant case, the voluntary admittance of Officer Hooper into the apartment by Miss Harper and the subsequent transaction involving her offer of prostitution in exchange for a fee of twenty-five dollars clearly established sufficient evidence for Officer Hooper to deduce that the misdemeanor of keeping a disorderly house was being committed in his presence. Therefore, the arrest of Miss Harper and subsequently of appellant without a warrant on this charge was proper. See *Matthews v. State,* 228 Md. 401, 403, 179 A. 2d 892 (1962). It is well established that an arrest is legal when it is the product of the

observation of a misdemeanor committed in the presence of the arresting officer. *Crosby v. State,* 2 Md. App. 578, 588, 236 A. 2d 33 (1967); *Crumb v. State,* 1 Md. App. 98, 107, 227 A. 2d 369 (1967); *Scott v. State,* 1 Md. App. 481, 492, 231 A. 2d 728 (1967); *Musgrove v. State,* 1 Md. App. 540, 546, 232 A. 2d 272 (1967).

The call for assistance by Officer Hooper fully justified the entry into the apartment by the other officers in their effort to render assistance and protection to a fellow officer and to prevent the escape of the other occupants.

Having personally observed Miss Harper leave the room with the marked twenty-five dollars, paid to her for the services to be rendered, and her return a short while thereafter, sans money and apparel, the officer was justified in making the search of the area in an effort to retrieve the money. When this effort was confronted with the statement by Miss Harper that she had given the money to "Phyllis," who purportedly had left, and the untruth of this statement being vividly apparent in the negating of such a possibility by the fact that the officers outside had not observed anyone leave, there was, under these circumstances, ample probable cause to believe the felonies of receiving money for procuring a female for a house of prostitution, Art. 27, § 428 (Code Replacement Vol. 1967), and receiving earnings of a prostitute, Art. 27, § 430 (Code Replacement Vol. 1967) had been committed and that the guilty party was still within the confines of the apartment with the ill gotten gains. Therefore, the continuation of the search for the marked money was reasonable as a search incidental to the arrest for the misdemeanor and the probable cause that the above felonies had been committed. See *Mulcahy v. State,* 221 Md. 413, 422, 158 A. 2d 80 (1960); *David v. State,* 1 Md. App. 666, 669-670, 232 A. 2d 553 (1967).

In pursuing this objective, the police uncovered the three glassine packets which they believed to be narcotics. This belief was confirmed by a field test. This matter had then progressed to the point where a felony, narcotics possession, was now being committed in the presence of the police officers and the continuing search for the marked money was now joined in the threefold effort of securing the money, determining the ex-

istence of pandering, etc., and the search and seizure of the illegally possessed narcotics. Thus the police were justified in pursuing the search to recover all the fruits of the crimes and to fully determine whether there were other occupants involved and to prevent the destruction or removal of evidence and flight of those violating the law. See *Ker v. California,* 374 U. S. 23, 83 S. Ct. 1623, 10 L. Ed. 2d 726 (1963).

### Disorderly House

Article 27, § 125 (Code Replacement Vol. 1967) sets forth the penalty for the crime of Disorderly House. In *Curley v. State,* 215 Md. 382, 390, 137 A. 2d 640 (1958), the Court of Appeals, speaking through Judge Prescott, stated:

> "A house is disorderly if kept as a place where acts prohibited by statute are habitually indulged in or permitted. *State v. Martin* (N. J.), 73 A. 548, 549; 17 *Am. Jur., Disorderly Houses,* sec. 2: *Hochheimer,* op. cit., sec. 309."

This definition was adopted in *Rome and Modo v. State,* 236 Md. 583, 587, 204 A. 2d 674 (1964).

In *Reynolds v. State,* 219 Md. 319, 325, 149 A. 2d 774 (1959), the Court of Appeals stated through Judge Horney that:

> "[a]t common law a 'bawdy-house' or a 'house of ill fame,' in the popular sense of the terms, is a species of disorderly house." *Henson v. State,* 62 Md. 231, 232 (1884). See also *Beard v. State,* 71 Md. 275, 17 A. 1044 (1889). Cf. *Shaffer v. State,* 87 Md. 124, 39 A. 313 (1898).

Article 27, § 15 g (Code Replacement Vol. 1967) makes it unlawful to "engage in prostitution." Article 27, § 16 (Code Replacement Vol. 1967) states:

> "The term 'prostitution' shall be construed to mean the offering or receiving of the body for sexual intercourse for hire."

Miss Harper's entering into the aforenoted transaction to prostitute herself on the premises under the control and maintenance of the appellant, in addition to the presence of other

women ready to be so engaged, and appellant's possession of the marked money and acknowledgment of ownership, adequately establishes sufficient evidence to sustain the conviction of disorderly house, bawdy house, and allied counts arising from violations of Article 27, § 15 a, b, c, d and f of the Code Replacement Vol. 1967.

## Narcotics

Article 27, § 277 (Code Replacement Vol. 1967) makes it "unlawful for any person to * * * possess * * * control * * * any narcotic drug, except as authorized by this subtitle." See *Smith v. State,* 1 Md. App. 297, 303, 229 A. 2d 723 (1967). "Possession," as used in this section is given its ordinary meaning. *Bryant v. State,* 229 Md. 531, 537, 185 A. 2d 190 (1962) ; *Stewart v. State,* 1 Md. App. 309, 318, 229 A. 2d 727 (1967). "Control," as used in this section, is given its ordinary meaning, namely, "to exercise restraining or directing influence over" and also has been defined to relate to authority over what is not in one's physical possession. *Bryant v. State, supra,* at 537. Under this section, possession of narcotics and control of narcotics are two separate offenses. *Bryant v. State, supra; Stewart v. State, supra.* Article 27, § 300 (Code Replacement Vol. 1967) provides that such violation constitutes a felony.

The appellant was charged under the above statute. Three glassine packets of heroin hydrochloride were discovered in the apartment under the control of the appellant and when he was found hiding in a closet, he had in his possession and control an abundance of such narcotics specified as prohibited by statute. Article 27, § 276 (Code Replacement Vol. 1967). In addition, appellant also possessed narcotic paraphernalia in violation of Article 27, § 297 (Code Replacement Vol. 1967).

We find that there was fully sufficient evidence to sustain the conviction.

## Pandering

When accosted, the appellant admitted the money in the golf bag was his, including the marked twenty-five dollars. This together with his control of the premises constituted sufficient evidence to sustain the conviction for violation of Article 27, §§ 426, 428 and 430 (Code Replacement Vol. 1967).

Appellant's heavy reliance upon *Wong Sun v. U. S.,* 371 U. S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963), is unfounded. The record is absent a showing of any verbal evidence derived from an unlawful entry and unauthorized arrest nor was there an objection noted on the theory that the probable cause leading to the arrest of the appellant was tainted. Therefore, the instant case does not come within the ambit of *Wong Sun,* nor for that matter was such review properly preserved by timely objection as necessary under Maryland Rule 1085. See *Crowe and Williston v. State,* 240 Md. 144, 150, 213 A. 2d 558 (1965) ; *Prescoe v. State,* 231 Md. 486, 494, 191 A. 2d 226 (1963) ; *Reeves v. State,* 3 Md. App. 195, 238 A. 2d 307; *Tender v. State,* 2 Md. App. 692, 696, 237 A. 2d 65 (1968) ; *State v. Hill,* 2 Md. App. 594, 603, 236 A. 2d 27, 31 (1967).

The test of sufficiency of the evidence in a nonjury case is "whether the evidence, if believed, either shows directly or supports a rational inference of the facts to be proved, from which the court could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged." *Montague v. State,* 3 Md. App. 66, 72, 237 A. 2d 816 (1968) ; *Thomas v. State,* 2 Md. App. 502, 507, 235 A. 2d 777 (1967) ; *Chittum v. State,* 1 Md. App. 205, 209, 228 A. 2d 628 (1967). Upon the record before us, we find the trial judge's finding was not clearly erroneous. Maryland Rule 1086.

*Judgment affirmed.*