# JAMES JOSEPH WARD *v.* STATE OF MARYLAND

[No. 447, September Term, 1969.]

*Decided June 30, 1970.*

584

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Marvin Poe Sklar* for appellant.

*T. Joseph Touhey, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *Barbara L. Goldberg, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant was convicted at a court trial of the crime of keeping a disorderly house, the criminal information under which he was charged specifying that on November 12, 1968 he "unlawfully did keep a disorderly house on the premises known as Room 16 Duke's Motel * * * creating by his activity thereon a nuisance: to wit, did bring girls under the age of eighteen into said premises for the purpose of sniffing glue." On this appeal, it is contended by appellant that the criminal information failed to charge an offense and that the lower court erred in denying his pretrial motion to dismiss the information on that ground. Specifically, he urges that under Maryland Rule 712a an information must contain "a plain, concise and definite statement of the essential facts constituting the specific offense with which the defendant is charged"; that the information charged him with keeping a disorderly house because he brought minor females on the premises for the purpose of sniffing glue; that to constitute the offense of disorderly house, it must be shown that the house was kept as a place where acts prohibited by statute are *habitually* indulged in or permitted; that under Maryland Code, Article 27, Section 313A, it is a misdemeanor "for any person to deliberately smell or inhale such excessive quantities of any * * * [model airplane glue or the like such as to] cause conditions of intoxication, inebriation, excitement, stupefaction, or dulling of the brain or nervous system"; that the statute does not proscribe bringing girls of any age into a motel room merely to sniff glue; that as the information alleged only the sniffing of glue, it failed to charge an act prohibited by the statute and thus cannot provide the foundation upon which to bottom the crime of disorderly house; and that the information does not allege that the glue sniffing was habitual, nor did it specify the commission of any act occurring on more than one day, namely November 12, 1968.

The offense of keeping a disorderly house is a common

law misdemeanor in Maryland, although punishment for the offense is fixed by statute, Code, Article 27, Section 125.* *Jackson v. State,* 176 Md. 399. Since the crime is not defined by statute, it must be afforded its common law meaning in this State. *Lutz v. State,* 167 Md. 12; *State v. Gibson,* 4 Md. App. 236. In *Beard v. State,* 71 Md. 275, the offense of keeping a disorderly house was defined in these terms:

> "* * * The offense is that of a common nuisance, and it is necessary that the indictment should contain facts to show that a common nuisance has been created or permitted. This is done by allegation of such facts as show that the traverser maintains, promotes, or continues, what is noisome and offensive, or annoying and vexatious, or plainly hurtful to the public, or is a public outrage against common decency or common morality, or which tends plainly and directly to the corruption of the morals, honesty, and good habits of the people; * * *." (page 276)
>
> * * *
>
> "* * * The crime consists in the keeping of the house as a place of habitual or common resort of people of evil name and fame, and of dishonest conversation, there to consort together, thus affording opportunities for and temptations to the indulgence of their bad habits and passions, to the evil example and scandal of the neighborhood. * * *" (page 282)

The authorities are in general agreement with this quaint common law definition. See 24 Am.Jur.2d *Disorderly Houses,* Sections 1, 5; Wharton's Criminal Law and Procedure, Sections 762, 764; Hochheimer's Criminal Law (2d Edition) Sections 309-312; Perkins on Criminal Law (2d Edition) p. 409. Underlying the common law definition is the concept that the disorderly house is a

---

* See, however, Md. Code, Article 27, Section 291.

nuisance, habitually kept. The classification of a disorderly house as a nuisance was well established at common law. In *Lutz*, the Court of Appeals described a disorderly house as a "kind of offensive nuisance"; Hochheimer (Section 309), characterized the keeping of a disorderly house as "a species of public nuisance"; and *Jackson* gave approval to charging the crime in terms of its being an offense "to the common nuisance of all the people." It was held a nuisance at common law because it drew together "dissolute persons engaged in unlawful and injurious practices, * * * thereby [to] endanger the public peace and corrupt good morals." 24 Am.Jur.2d, *ibid.*, Section 10. A house may be disorderly either from the purpose for which it is appropriated or from the mode in which it is kept—the offense is one respecting "the conduct of the place" and not its ownership. *Curley v. State*, 215 Md. 382. While a house is disorderly if kept as a place where acts prohibited by statute are habitually indulged in or permitted, *Rome v. State*, 236 Md. 583, *Curley v. State, supra,* and *Speaks v. State*, 3 Md. App. 371, this is but one species of a disorderly house—it is not required to constitute the offense that the acts constituting the nuisance be prohibited by statute. *See Jackson v. State, supra; Beard v. State, supra.* And it is well settled that a place may be a disorderly house though it is quietly kept, no conspicuous improprieties are permitted, and the activities are not open to public observation. 24 Am. Jur., *ibid.*, Section 6.

Contrary to appellant's contention, we think the information in this case properly charged an offense over which the court had jurisdiction. The rule which seems to be generally recognized draws a line of demarcation between an indictment or information which completely fails to state an offense and one which alleges all the elements of the offense intended to be charged and apprises the accused of the nature and cause of the accusation against him, even though it is defective in its allegations or is so inartfully drawn that it would be open to attack in the trial court. *Putnam v. State*, 234 Md. 537; *Baker*

*v. State,* 6 Md. App. 148. The information filed against appellant specified that he was unlawfully keeping a disorderly house in Room 16 at Duke's Motel on November 12, 1968 and, by his activity thereon, created a nuisance in that female juveniles were on the premises for the purpose of sniffing glue. Whether the facts alleged were such as constituted a nuisance within the meaning of *Beard* was a matter of evidence; that the information did not specifically charge that the glue sniffing violated Section 313A, or that it was habitually done on the premises, does not mean that it failed completely to state the offense of disorderly house within the common law definition of that crime. We think the constituent elements of the offense, including habitualness, were encompassed within the allegation that appellant was keeping a "disorderly house." *See Putnam v. State, supra.* At most, the information was open to challenge on sufficiency grounds—not that it failed to state an offense—but that it did so imperfectly by failing on its face to sufficiently inform the accused of the precise nature and duration of the nuisance with which he was charged, thus entitling him prior to trial to move to dismiss the information under Maryland Rule 725b or to a bill of particulars under Rule 715.[1] But this was not the ground upon which appellant sought dismissal of the information; he claimed, erroneously, that it failed completely to state an offense. The record before us discloses clearly that both the appellant and the prosecution understood prior to trial that the glue sniffing intended to be averred in the information was of a nature illegal under Section 313A. The case was tried and appellant was convicted on that theory and premise and he was in nowise misled or prejudiced in his defense.

The evidence at the trial showed that appellant, a sixty-one year old man, rented Room 16 at Duke's Motel from

---

1. An indictment is sufficient if it informs the person charged of the accusation against him as required by Article 21 of the Maryland Declaration of Rights and if the charge is made with sufficient definiteness to prevent the accused from being charged again with the same offense in a future prosecution. *Leet v. State,* 203 Md. 285.

November 3 until his arrest on November 12, 1968. On November 11, 1968, Corporal Edwin Schulz went to the Motel where he interviewed two of the Motel maids and received from them a bag containing seven empty glue tubes, a small paper bag with glue in it, and a milk carton with a tube of glue in the bottom. Schulz, nine years a member of the police force, testified that he had been involved in three prior glue sniffing cases; that he had received academic training in matters involving narcotics, including glue; and that he was familiar with and could identify glue by its smell. Describing the "art" of sniffing glue, Schulz explained that the subject takes a small bag, squeezes glue from or punctures the glue tube, places it in the bottom of the bag, forms a pocket on top of the bag, fits it to the face, and inhales. Schulz testified that the glue tubes given to him by the maids had been "busted" or the glue squeezed therefrom; and that it was tester's cement for plastic models, commonly referred to as airplane glue. Schulz then obtained a warrant to search Room 16 at the Motel. Before executing the warrant, he arranged with the Motel management to occupy Room 15, which adjoined appellant's room. At approximately 6:10 p.m. on November 12, Schulz observed appellant enter his room with three young girls, two of whom appeared to be about fifteen and the other about sixteen or seventeen. At 8:00 p.m. appellant left with one of the girls, Antionette Franks, and returned with her at 8:35 p.m. During his surveillance, Schulz heard loud and vulgar language emanating from appellant's room; he heard talk about "bags" which he said was a customary term of reference used in connection with glue sniffing; that he heard a voice say: "Some times you get high on one bag or one tube, and some times it takes ten or twelve"; he heard another voice say: "Give me the bag." At this point, Schulz decided to execute the warrant. Upon gaining entrance to Room 16, the smell of glue was, according to Schulz, so strong that it "hit you in the face." Schulz found the room in a state of general disorder. He found eight empty and two partially empty glue tubes on the

bed, floor and chair; he found a carton containing twenty-seven full tubes of glue on the floor by the door; he found several small paper bags with wet glue in the bottom. He discovered Miss Franks "passed out" on the bed; the other girls had "glassy eyes" and appeared under the influence of glue.

One of the Motel maids, Marion Beall, testified that she cleaned Room 16 on at least one occasion between November 3 and 12 and found glue bags and glue tubes in the trash cans; that she knew it was glue from its odor and that she saw young girls, fifteen or sixteen years of age, leaving Room 16 in the afternoons, several times a week.

Appellant testified on his own behalf. He claimed the girls came to his room to watch television; that he was friendly with the girls' families; that he had the glue to make model airplanes in his leisure time; that he never saw anyone sniff glue in the room; and that it was the same girls who were in his room on the night of his arrest as were with him on the other occasions mentioned by the Motel maid.

In finding the appellant guilty of keeping a disorderly house, the trial court stated that it was satisfied beyond a reasonable doubt that there was illegal glue sniffing on November 12; and that "I'm completely satisfied Mr. Ward had made a practice of permitting this kind of thing to be done in his rented room on numerous occasions."

Appellant contends that the search warrant was not issued upon probable cause and, being invalid, it was error to admit the evidence seized thereunder at the trial. In the application for the warrant, Schulz, the affiant, stated that he had received information from one Vernon Bessling of a specified address in Baltimore, that his friend, Marion Beall, a cleaning maid at Duke's Motel, had told him that in the past she found empty tubes of model glue and bags with a glue residue therein in Room 16 of the Motel, occupied by Ward, and that on November 11, 1968, she found in Room 16 eight empty glue tubes, a bag containing a residue of glue and an empty milk car-

ton with an empty tube of glue in it. Schulz recited in his affidavit that he interviewed Miss Beall and another of the Motel's cleaning maids, Mae Dorsey; that they related to him that since November 3 they had found empty glue tubes and glue bags in Room 16; that they both observed two young girls going into Room 16 and heard cries of "Stop, no more"; that on another occasion, Marie Rabb, also a cleaning maid, attempted to enter Room 16 in response to a cry from within and when the door was opened, she observed two young females in bed and detected the odor of glue within the room. Appended to the application for the warrant were signed statements of Beall and Dorsey written in their own handwriting and witnessed by three police officers. Based on this information, Schulz asserted in the application that he had probable cause to believe that glue sniffing was occurring in Room 16 and that the laws relating to contributing to the delinquency of minors were being violated on the premises. He sought authority to search Room 16 and to seize evidence of illegal glue sniffing and all evidence relating to contributing to the delinquency of a minor. The magistrate issued the warrant.

Only the probability and not a *prima facie* showing of criminal activity is the standard of probable cause. *Spinelli v. United States*, 391 U. S. 933. That a search warrant may properly issue based on hearsay information not reflecting the direct personal observations of the affiant is well settled, so long as the magistrate is informed of some of the underlying circumstances from which the affiant could reasonably conclude that the hearsay information was reliable and that the items sought to be seized were within the place to be searched. *Grimm v. State*, 6 Md. App. 321, and cases cited at page 326-327. While Schulz did not state in his affidavit (as he did in his testimony) that the maid turned over to him the glue found on November 11, we think there were sufficient facts contained in the affidavit from which the magistrate could properly conclude that there was a substantial basis for crediting the hearsay and that in view of the nature of

592

the information provided, the maids, as employees of the Motel, were reliable persons. *See Sessoms v. State,* 3 Md. App. 293. It is settled that when a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing courts will accept evidence of a less judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant. *Aguilar v. Texas,* 378 U. S. 108; *Jones v. United States,* 362 U. S. 257. Equally well settled is the principle that the resolution of doubtful or marginal cases should be largely determined by the preference to be accorded to warrants. *United States v. Ventresca,* 380 U. S. 102; *Tucker v. State,* 244 Md. 488. We hold that the search warrant was validly obtained and that the evidence thereunder seized was properly admitted at the trial.[2]

Contrary to appellant's contention, we think the evidence was sufficient to support the conviction and particularly to show that the glue sniffing on the premises was of a nature proscribed under Section 313A. The glue found in such quantity in appellant's room on November 12 was airplane glue, a type specifically covered by the statute. The glue bags in the room, together with the conversation overheard by Officer Schulz, plainly indicated that the glue was being sniffed and not used to make model airplanes; indeed, there was no evidence that appellant was pursuing this hobby in his room. The condition of the girls found in the room at the time of the arrest left no doubt that they had inhaled excessive quantities of glue that night; one of them was actually unconscious, two were glassy eyed, and the smell of glue in the room was described in terms of its being overpowering. And the presence of an entire unused carton of glue in the room on November 12 constituted grim evidence of

2. We note that while Schulz testified that the search was made under authority of the warrant, he had at the time he entered Room 16 probable cause to believe that a misdemeanor was being committed in his presence for which an arrest without a warrant, and search incident thereto, could properly have been made. *See Salmon v. State,* 2 Md. App. 513.

the future in store for the inhabitants of Room 16. Against such an evidentiary background, the rational inference to be drawn is that on those occasions prior to November 12 when the girls were observed in Room 16, they were there on a similar mission; indeed, the spent glue tubes and used glue bags showed that their purpose in being in the room was not to watch television or to make model airplanes, but to sniff glue in a manner prohibited by law. That the trier of fact was not obliged to believe appellant's testimony that he knew nothing of such activity is too clear to require discussion.

We do not think the commission of a single or isolated act of illegal glue sniffing on the premises would have constituted Room 16 a disorderly house within the meaning of *Beard*. Generally speaking, it must appear that the acts injurious or offensive to the public which constitute the nuisance are recurrent. But there is no particular extent of time prescribed during which the improper practices must continue or recur; each case must be adjudged according to its own circumstances. It is usually deemed sufficient if, when the character of the culpable acts and the circumstances under which they were committed are taken into account, it appears that they were repeated often enough to warrant an inference that the house was kept for the indulgence of such practices. See 24 Am.Jur.-2d *ibid.*, Section 7. It has been held sufficient if the acts occur during any substantial period of time as will constitute them a continuing menace, and that repetitions of a disorder on a single day, at least where the place has acquired a character as a disorderly house, or on two days, may be enough to constitute the place a disorderly house. See 27 C.J.S. *Disorderly Houses*, Section 4(4). We think the trier of fact could here conclude from the evidence that appellant habitually used Room 16 between November 3 and November 12, 1968 as a place for the illegal sniffing of glue. While the indictment charged that he was keeping a disorderly house on November 12, 1968, evidence of acts committed therein prior to that date was clearly relevant and admissible to show that, on that date,

he was committing the crime of keeping a disorderly house. We conclude then that the judgment of conviction was not clearly erroneous under Maryland Rule 1086.

*Judgment affirmed.*
*Appellant to pay the costs.*