PERICLES ELEY *v.* STATE OF MARYLAND

[No. 336, September Term, 1967.]

*Decided May 29, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Morris Mazelis* for appellant.

*Alfred J. O'Ferrall, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Donald Needle, Assistant Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Robert W. Baker, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

PER CURIAM.

Pericles Eley, the appellant, was convicted of robbery in a trial in the Criminal Court of Baltimore, Judge Meyer M. Cardin presiding without a jury. He complains that the evidence was insufficient to support the verdict.

Jessie J. Williams, age 56, a driver for the Checker Cab Company, testified that on June 3, 1967, at approximately 2:30 A.M., Pericles Eley and a female companion entered his taxicab. They were driven to the vicinity of Patterson Park Avenue and Mura Street, where the female, later identified as Gladys Harvey, left the cab and told the driver to take Eley to the Y.M.C.A. located on Franklin Street. She also told the driver that Eley would pay the fare, and that she had given him $10.00.

On the way to the Y.M.C.A. Williams picked up two additional passengers along the route, whose destination was stated to be Carey Street. Williams testified that he proceeded toward the Y.M.C.A. and that at that location Eley told him that he did not have any money and asked him to wait while he went to his room and got the money. Williams told Eley that he would not wait, but that he would take the other two passengers to Carey Street and then return with Eley to the Y.M.C.A.

After dropping off the other passengers and returning to the Y.M.C.A., Williams accompanied Eley to his room. Williams stated that he accompanied Eley as a matter of standard procedure followed by most taxicab drivers, at the suggestion of the police department when dropping off non-paying passengers at multi-family or commercial dwelling units. Upon entering the room Eley found a ten dollar bill, gave it to Williams, and requested $8.00 change.

Williams testified that when he went to count the change, he was shoved by Eley and fell across a bed. Eley then jumped on Williams, choked him, and robbed him of over $30.00 in one dollar bills. The men struggled for approximately ten minutes, until Williams was exhausted. Eley threatened to use a knife on Williams and demanded more money. Williams said that he had an additional $35.00 at his home, whereupon Eley demanded that it be obtained. The two men then proceeded to Williams' home, where Williams was able to alert his wife and request that she call the police who arrived soon thereafter.

Officer Charles Von Nordeck of the Baltimore City Police Department testified that he arrived at the home of Williams at 3:53 A.M., and that after speaking with Williams, and receiving a robbery complaint, he placed Eley under arrest. A

search of Eley revealed 33 one dollar bills in his wallet, a ten dollar bill, two one dollar bills as well as some change. The officer related that Williams told him that he was robbed at approximately 2:10 A.M. and that the reason for the delay in reporting the crime was that there was a scuffle in Eley's room. The officer also stated that it would take approximately 25 minutes to drive from the Y.M.C.A. to Williams' home.

The only witness produced by the defense was Eley who testified that he is not a resident of Baltimore and that he arrived in Baltimore at approximately 6:30 P.M. the evening of June 2nd; that he came to Baltimore to see a lady he had met in New York City, one Gladys Harvey, and that he saw her that evening when she got off work. Eley testified that he and Gladys Harvey left the Kozy Korner about ten minutes to two on the morning of June 3rd. When they stopped the cab driven by Williams, Eley testified that he did not want to get in because there were two other people in the cab who were quite intoxicated. After dropping off the other two passengers, they proceeded to drop off Eley's girlfriend at her house. At this point, Williams asked Eley to get in the front seat. Eley then testified that Williams picked up two additional passengers and took one to Fulton Street and one to Carey Street where they then proceeded back to the Y.M.C.A. on Franklin Street. The witness then stated that Williams requested his fare. Eley claimed he gave him a ten dollar bill and received $8.35 change.

During the ride, Eley testified that he dozed off and woke up in a start because Williams was touching him and making "wise" remarks; that at one point, he jumped out of the cab and when advised by Williams that he was only joking, he got back into the cab and told him to take him home. He then stated that Williams accompanied him to his room at the Y.M.C.A. with Eley's consent and attempted to force him to engage in homosexual activities. Eley said he refused. Williams then offered him $100.00, which could be obtained at Williams' home, if Eley would not tell his girlfriend, Gladys Harvey, of Williams' activities. Eley stated that Williams had told him that Gladys Harvey knew Williams' wife. Eley allegedly agreed to the bargain because he felt sorry for Williams. He also stated that once he arrived at the Williams' residence, he re-

quested Mrs. Williams to call the police. Mrs. Williams, however, testified in rebuttal, that her husband awakened her when he arrived home, told her that he had been robbed, and that she phoned the police. She denied that Eley asked her to call the police.

To bolster his complaint that the evidence was insufficient, Eley contends that the testimony of Williams was so contradictory as to have no probative force, under the rule of *Kucharczyk v. State,* 235 Md. 334, 201 A. 2d 683. The alleged inconsistencies relate to the testimony by Williams who made innocuous inconsistent statements concerning (1) the number of passengers in the taxicab at the time Eley and his girlfriend first entered the cab; (2) whether Williams drove Eley directly to the Y.M.C.A. after Gladys Harvey left the cab or whether Williams picked up additional passengers first; (3) the time of the robbery; and (4) whether Williams was uncertain as to whether he had been robbed.

The rule laid down in *Kucharczyk v. State, supra,* is not applicable if the inconsistencies pertain to minor details, *Bell v. State,* 2 Md. App. 471, 472, 235 A. 2d 307, *Tillery v. State,* 3 Md. App. 142, 148, 238 A. 2d 125. The first three alleged inconsistencies pertain to minor details. The fourth is based on an erroneous analysis of Williams' testimony:

> "Q. You came out of the room and you got on the same elevator again?
> "A. Yes.
> "Q. Who got on first this time?
> "A. He did.
> "Q. You had just been robbed?
> "A. I think no, I'm not certain, I think he did.
> "Q. The door opened and one of you two got in there first, didn't you?
> "A. Yes.
> "Q. You had just been robbed, is that right?
> "A. Yes."

It is clear that in answer to the first question of whether he had been robbed, Williams was still answering the previous question as to who entered the elevator first. Therefore, the

asserted inconsistencies do not fall within the rule pronounced by *Kucharczyk v. State, supra.*

This Court said in *Lucas v. State,* 2 Md. App. 590, 235 A. 2d 780, 782 that "In reviewing the sufficiency of the evidence, this Court determines whether the court below has sufficient evidence from which it could be fairly convinced beyond a reasonable doubt of the defendant's guilt." We hold the evidence here sufficient. The Court below was under no obligation to believe Eley's story, *Lawrence v. State,* 2 Md. App. 736, 237 A. 2d 81. We find that the trial judge's findings were not clearly erroneous, Maryland Rule 1086; we must, therefore, affirm the judgment.

*Judgment affirmed.*