# WILLIAM CHARLES BARNES *v.* STATE OF MARYLAND

[No. 372, September Term, 1967.]

*Decided September 19, 1968.*

The cause was argued before MURPHY, C.J., and ANDER-SON, MORTON, ORTH, and THOMPSON, JJ.

*James W. McAllister* for appellant.

*Dickee Howard, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Thomas N. Biddison, Jr., Assistant Attorney General, Joseph D. Werner, State's Attorney for St. Mary's County,* and *Fred Grant, Assistant State's Attorney for St. Mary's County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The appellant was found guilty generally under a two count indictment charging robbery with a deadly weapon and robbery, by a jury in the Circuit Court for St. Mary's County and sentenced generally to imprisonment for a term of 18 years.

On appeal from the judgment he presents three questions:

    I  "Was the appellant deprived of his constitutional rights?"

  II  "Was the evidence of identification proper and sufficient in view of the testimony?"

 III  "Was the evidence sufficient to sustain the conviction?" [1]

I

The appellant claims that he was deprived of his constitu-

---

1. The verdict of guilty generally convicted the appellant on each count. *Manning v. State,* 2 Md. App. 177. In *Darby v. State,* 3 Md. App. 407 we held that Md. Code (1967 Repl. Vol.) Art. 27, § 488 does not create a new substantive crime of "robbery with a deadly weapon" but only provides a statutory penalty for the existing crime of robbery more severe when the robbery is committed with a deadly weapon than when it is not. Therefore, upon the conviction of the appellant of robbery with a deadly weapon, the conviction of robbery based on the same alleged acts, was a conviction on a duplicitous count. *Jones v. State,* 3 Md. App. 608. But the appellant did not raise the point below and does not raise it on appeal, treating the verdict of the jury as a conviction of robbery with a deadly weapon. The general sentence imposed was within the maximum authorized by § 488.

tional rights but his argument is completely lacking in specificity. He briefly summarizes the procedural requirements of *Miranda v. Arizona*, 384 U. S. 436 and cites *Escobedo v. Illinois*, 378 U. S. 478 and *Gideon v. Wainwright*, 372 U. S. 335 but does not state how they are here applicable. No statement obtained from the appellant during a custodial interrogation was offered in evidence so *Miranda* affords him no benefit. *Crosby v. State*, 2 Md. App. 578. The record does not disclose that he at any time requested counsel and such request was denied so he is not within the ambit of *Escobedo*. *Reeves v. State*, 3 Md. App. 195; *Crumb v. State*, 1 Md. App. 98. Nor does it show that he was not afforded effective representation of counsel at every critical stage of the proceedings against him as required by *Gideon* and its offspring. Such contentions as he raises in regard to the first question are without merit.

## II

The State produced two witnesses who made a courtroom identification of the appellant as one of the robbers. Ezmer E. Taylor, an eyewitness to the crime, made a positive identification. The transcript of the trial is not clear as to the courtroom identification by the victim of the robbery, Dorothy M. Stehley. During the direct examination of her, after she had recounted the circumstances of the robbery, stating that there were two robbers, one of whom had a rifle, the transcript reads as follows:

"Q. Mrs. Stehley, would you look around here and take your time and tell us whether or not you can identify the one with the rifle.

A. (The witness pointed).

THE COURT: No, you don't have to walk around. Just count down or describe pieces of clothing which one you're pointing to.

THE WITNESS: This one, the next to the end.

THE COURT: Which one?

THE WITNESS: The next to the end.

THE COURT: All right.

THE WITNESS: I haven't seen him for over a year."

The State continued its examination, eliciting testimony as to the size of the man with the rifle (about 5 feet 10 inches, 150-160 pounds), how he was dressed at the time of the crime (a dark overcoat, a Derby hat with a small brim, black, a white shirt and tie), how long he had been in her view (about 10 minutes), whether he had anything on his face (he did not but another robber did), and whether she was shown "any pictures of a number of people" (she had been shown pictures shortly after the crime by the police). At this point defense counsel objected, saying, "It's perfectly clear the witness has not identified the defendant in this case, Your Honor. And Mr. Weiner now is trying to show a group of pictures that the defendant appears in." Mrs. Stehley thereupon said, "Well, I said the one in the end." The State, over objection, showed her eight pictures from which she picked out the picture of the appellant as the robber with the rifle and the pictures were admitted in evidence with no objection. On cross-examination she was asked:

> "Q. You did, when asked by the State's Attorney, to point and by the judge, to point to one. You did point to this gentleman here.
> A. Yeah, but I pointed to that one first.
> Q. But you pointed to this one in answer to the judge's question, did you not?
> A. That's right. I haven't seen him for a year.
> Q. But you were shown a picture of him by the State. You were shown this group of pictures by the State about a week, about two weeks ago, weren't you?
> A. Yes."

On redirect examination the transcript shows:

> "Q. Mrs. Stehley, when you first pointed to Barnes (the appellant) did he have his hand up or up—"
> (the question was objected to as leading and the objection was overruled).
> THE WITNESS: You mean when he came in?
> MR. WEINER: Today, yes, now. When you first identified Barnes, was his hand down or up from his face?

THE WITNESS: I think it was up a little.

BY MR. WEINER:

Q. When you first—

A. Yes, I first identified him as the one. That is right.

Q. When you first identified him, was his hand down?

A. I think it was up, but I'm not positive."

The witness was then questioned on re-cross-examination by defense counsel:

"Q. And the judge did ask you to point out to the jury the person that came into the Atwood Bus Station. And in answer to the judge's question, you did point to this gentleman here.

A. That is second choice. I pointed to this one first.

Q. Did the judge not ask you to point or to describe the clothing by which this person was dressed?

A. Yes.

Q. You understood his question? You understood the judge's question?

A. Yes, when—

Q. In answer to the judge's question you pointed to this gentleman.

A. Yeah, but this one first.

Q. You're missing my—my question is, in answer to Judge Bowen's question you pointed to this gentleman.

A. The second time, yes. It's been a year since I've seen him.

Q. I understand.

MR. WEINER: You first pointed to Barnes, is that correct?

THE WITNESS: I first pointed to Barnes." [2]

---

**2.** This case points up the importance of identifying for the record those matters occurring during the testimony of a witness which are not apparent from the words of the witness or the words of the court and counsel. While what went on here may have been clear to those present at the trial, it is certainly obscure from the bare transcript of the testimony. It cannot be ascertained from

In any event, we think from the transcript that defense counsel, the State and the court accepted that Mrs. Stehley had identified the appellant in the courtroom at some stage during her testimony. At the trial, defense counsel, in arguing the matter to the court, acknowledged that she had identified the appellant in the courtroom and in his brief, the appellant so acknowledges—"[t]he testimony further shows that Mrs. Stehley identified one other than the defendant in court as the defendant (sic), though she later changed." He then refers to the "other witness (Taylor) to identify the defendant at the trial * * *."

As we construe the arguments made by the appellant in his brief with regard to his question II, he raises three contentions. First, he baldly states: "As a corollary to question No. 1, the evidence of the identification should have been excluded under the applicable cases cited thereunder." We find none of them applicable. The constitutional principles enunciated in *Miranda* relate only to custodial interrogations. The placing of an accused in a line-up and the viewing of pictures by witnesses are not testimonial or communication acts of the accused and are not within the ambit of *Miranda*. The applicability of the right to counsel under *Gideon* and *Escobedo,* the other two cases cited by him under his question I, leads into his second contention, that the identification evidence was inadmissible because he was not represented by counsel at the line-up or when the witnesses had been shown pictures. He relies on *United States v. Wade,* 388 U. S. 218. But neither *Wade* nor *Gilbert v. California,* 388 U. S. 263 are applicable to the instant case, for we apply their principles only to line-ups conducted after 12 June 1967. *Stovall v. Denno,* 388 U. S. 293; *Thompson v. State,* 4 Md. App. 31; *Tender v. State,* 2 Md. App. 692. The line-up here was conducted prior to that date. The absence of counsel at the line-up did not preclude the challenged testimony. There was no claim that the line-up was otherwise improper. And there is no constitutional requirement that counsel be present when pictures are viewed by witnesses. See *Simmons v. United States,* 390 U.

---

the transcript to whom the witness pointed, who was the person "next to the end" and "on the end," who was "this gentleman here" or "this one" or "that one."

S. 377, decided 18 March 1968. The third contention is that the courtroom identification of Taylor and Mrs. Stehley was inadmissible because it was "tainted." As far as we can gather from the argument in the brief, the claim that such evidence was "tainted" was based on the fact that pictures in which that of the appellant was included, had been shown to the witnesses and that although Mrs. Stehley identified the appellant at the line-up, Taylor did not make an identification thereat. The appellant alleges that "about a week before the trial, all the witnesses had a conference with counsel for the State and were shown photographs (six) which included the defendant. All this in the presence of each other and for a period of about an hour." This allegation does not appear to be supported by the record. A police officer testified that Mrs. Stehley was shown six photographs two weeks before trial and identified that of the appellant. Taylor testified that he was shown nine or ten photographs about a week before the trial and picked out that of the appellant. Another witness was shown six photographs a week before the trial but was unable to make an identification. There is no evidence that another witness was ever shown the photographs.[3] Photographs shown the witnesses were admitted in evidence without objection. Evidence as to the extrajudicial identifications was challenged only on the basis of *Wade*. There was no claim at the trial and there is none on appeal that the confrontation of the witnesses with the pictures was otherwise improper.[4] The general rule is that testimony that a victim was able to identify his assailant from a police

---

3. The crime was committed on 30 November 1966. The trial commenced 17 November 1967.

4. Defense counsel objected to and moved to strike a police officer's testimony concerning the identification of the appellant from the pictures "based on a recent Supreme Court case U. S. versus Wade." The courtroom identification by Taylor came in without objection and thereafter defense counsel moved to strike it "for the same reasons." Motion was made to strike the courtroom identification by Mrs. Stehley "for the reason that Mrs. Stehley had identified the defendant at a line-up when the defendant was not represented by counsel, and the State had not laid a proper foundation for her identification outside of the line-up itself." The objections were overruled and the motions denied.

photograph is admissible. *Austin v. State,* 3 Md. App. 231. In *Simmons v. United States, supra,* noting that "[d]espite the hazards of initial identification by photographs, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through the scrutiny of photographs," and recognizing that the "danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the methods potential for error," the Supreme Court said that it was "* * * unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. We hold that each case must be considered on its own facts, and that a conviction based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." We find nothing in the record before us that the photograph identification procedure in the instant case was so impermissibly suggestive and hold that the courtroom identifications were properly admitted in evidence. Compare *Rath v. State,* 3 Md. App. 721. That Taylor did not identify the appellant at the line-up (he said that at that time he was scared of the appellant), such lack of positiveness in the identification at trial by Mrs. Stehley and the pretrial identification by photograph went only to the weight of the identifications, a matter for the jury. *Cox v. State,* 3 Md. App. 136; *Logan v. State,* 1 Md. App. 213.

We have found that the "evidence of identification" was properly admitted. We also think that it was sufficient to show the criminal agency of the accused. The jury could have reached this conclusion by the identification of Taylor without considering the testimony of Mrs. Stehley on the matter. The positive identification of a single eyewitness, if believed by the trier of facts, is sufficient to sustain a conviction. *Montague v. State,* 3 Md. App. 66.

### III

There was evidence before the jury that Mrs. Stehley, a cashier and ticket seller at the Atwood Bus Station was on duty shortly after 2:00 A.M. on 30 November 1966 when she was robbed by two men, one of whom was armed with a rifle. They stole about $2700 from a cash drawer and a safe behind the counter. The one with the rifle was unmasked but the other had a mask over his face. Taylor was a passenger in a taxi cab which pulled into the station while the robbery was in progress. The appellant ran out of the station with a rifle, came up to the cab and "tells everybody to get out * * * and put your hands over your head." He then ordered them to run "through the alley." Taylor heard a car drive off, "very loud." He also saw another man behind the counter but "I focused my attention to the man with the gun more than I did the other man." The car was a '51 Chevrolet. As the men came into the station, Mrs. Stehley had pushed a button which activated a buzzer in the cab stand. The taxi cab dispatcher told the driver of the cab in which Taylor was one of the passengers to investigate and when he drove up "I saw a man behind the counter and I saw a man in front of the counter. A lady had her hands up and then the man in front of the counter had a rifle pointed at the lady." He corroborated the testimony of Taylor about being ordered out of the cab and "chased up the alley." He also heard the car starting and saw it drive away. He had seen it parked behind the station. The testimony of another passenger in the cab was substantially the same. The getaway car had been touched up with a "spray bomb" and had "mag wheels on the front." [5] The next morning the police located a car answering the description of the car used in the robbery in a garage by the appellant's residence. It was owned by the appellant's stepbrother. While the police were looking at the car the appellant came out of the house and said he had not driven the car lately because it had "an inadequate muffler and bad tires." On 2 December Mrs. Stehley picked out the photograph of the appel-

---

5. The cab driver described "mags" as "a racing tire rim made of magnesium alloy that are both a decoration and functional on some cars. And they are very popular with young people."

lant from among six photographs shown her. The cab driver and his passengers identified the car as the one they had seen drive away from the scene of the crime. The appellant, testifying on his own behalf, denied that he had committed the robbery but admitted that he had driven the car in the past and although his brother had the keys to the car "there's a lock switch on it and the switch could be jimmied and it could be started." [6]

In order to overturn a judgment entered on the verdict of a jury for insufficiency of the evidence, it is necessary that there be no legally sufficient evidence or inferences drawable therefrom on which the jury could find a defendant guilty beyond a reasonable doubt. *Agresti v. State,* 2 Md. App. 278. We have no difficulty in finding that there was legally sufficient evidence on which the jury could find that the crime of robbery, had been committed and that it had been committed with a dangerous and deadly weapon. We have found that there was evidence sufficient to show that the appellant was one of the participants in the crime by the positive identification of him by an eyewitness; the identification of the car used in the crime and its connection with the appellant are also of probative value with regard thereto. There being legally sufficient evidence to prove both the *corpus delicti* of the crime and the criminal agency of the appellant, the jury could properly find him guilty beyond a reasonable doubt and we may not overturn the judgment.

*Judgment affirmed.*

6. The appellant's brother, Henry M. Barnes, operated a tavern, Mable Ball's place, at St. Inigoes. He testified that he purchased the car about a month before 30 November 1966 but had not been driving it because "I had to do some work to it." He had another car, a '65 station wagon, which he drove.