# REGINALD E. BAILEY *v.* STATE OF MARYLAND

[No. 331, September Term, 1968.]

498

*Decided April 8, 1969.*

*Vincent L. Gingerick* for appellant.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Linthicum, State's Attorney for Montgomery County,* and *Page Joseph Digman, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

On Sunday, 25 February 1968, about 2:00 P.M. two men held up the office of the Western Union Telegraph Company on Colesville Road at Georgia Avenue in Montgomery County, Maryland, in the presence of three employees of the company—Andrew S. Donnan, the manager, Thomas Wischnowski, a clerk, and Elizabeth S. Brown, a telephone operator. A "colored man", identified as the appellant, entered the office, followed a few

seconds later by another "colored man", designated hereinafter as the "second man." The appellant went to the counter and wrote on a telegraph form. Wischnowski, who was at the "printer", wiring, testified that he went to the counter and the appellant handed him the form. On it was written the name "Mr. Elgin", a word following which was illegible because it was scratched over, and below the name "This is a hold up". When he handed the clerk the form he kept one hand in his right-hand pocket. The appellant told the clerk to turn around and lie on the floor and he did so. Someone took his wallet containing two dollars out of his pocket. The clerk was then told by the appellant to get up and unlock the safe at the upper portion of the counter and he did so. He was also directed to open the safe "at the lower portion" but explained that only "Brinks could open that safe." He was then ordered back on the floor and later was told to get up and go to the ladies room and he did as ordered. He was in the ladies room "a matter of thirty seconds to a minute." He then came out and telephoned the main office.

The telephone operator also saw the men come in the office and saw the appellant go to the counter. The second man went behind the counter, "pointed a gun", and said, "This is a hold-up. Lay on the floor." "I laid down * * * on my face." She was then told to get up and go to the ladies' room and the door was closed by one of the robbers. "They said before they closed, when they were leaving, just, 'If you stick your heads out of here we are going to blow them off.'" She did as she was ordered because "he told us to. He had a gun pointing at me." While she was on the floor one of the robbers pushed her head down with his hand "to make sure my head was down."

The manager was working at his desk doing book work. When he looked up both robbers were in the office, the appellant at the counter. He had resumed his work when he was "grabbed by the left arm and jerked around." There was a man with a gun pointed at him who said, "This is a holdup. Get down on the floor." While he was on the floor the appellant "came over to me and pushed my head down on the ground and said, 'Keep your head down.'" The appellant had a gun in his hand. At one time while he was on the floor the appellant "was trying to pull out my wallet * * * He took the wallet. It contained $20." A

short time later he was grabbed by the arm and told to follow the other two employees into the ladies' room. The second man said, "Do not open the door or we will blow your heads off." Both robbers had guns. They stole $218.25 of the company's money. At the time the crime was committed the only persons in the office were the three employees and the two robbers.

Each of the witnesses made an in-court identification of the appellant. The identification of each of the clerk and the telephone operator were positive. When the manager was first asked if he saw anyone in the courtroom that was at the counter when he first looked up, he said, "Well, I believe it is the gentleman there at the back desk," indicating the appellant. But there was no equivocation when he was asked who came over to him while he was on the floor and said, "Keep your head down." He said, "the defendant, right there (indicating)." Each witness described the appellant as wearing a beret. Each said he was "heavy set" or "heavy-built" or "stocky." The clerk said the beret was "real loud green", and was able to add only that he was dark complected. He was not able to say whether or not he had a beard or had long or short hair—"he had a hat on, sir". The telephone operator said "it looked like he had a sweater on * * * or something like that." She said his sweater was "bright-colored * * * green." His face was "rough looking * * * just like somebody needed a shave." The manager said the beret was "bright green." He had on a plaid coat, a "loud shirt" and "checked trousers." In profile his face was rough. "It looked rough." [1]

The appellant was convicted by a jury in the Circuit Court for Montgomery County of the robbery of the manager and violently stealing $218.25 of the money of the Western Union Telegraph Company (3rd count of indictment no. 9323); the robbery of the clerk and violently stealing $2.00 of the clerk's

---

1. Each witness described the second man as of slender build or "slim" and wearing a dark felt hat. The clerk said he had on "either a raincoat or a trench coat." The telephone operator and the manager described him as wearing a suit, "a business suit." The telephone operator said it was a dark blue or black suit; the coat he had on was a regular suit coat, not a trench coat. The manager said he had "a very smooth complexion."

money (3rd count of indictment no. 9324) ; and the assault of the telephone operator (2nd count of indictment no. 9325). He was sentenced to 8 years on the first conviction, 4 years on the second conviction to run concurrently, and sentence was suspended generally on the third conviction.

## THE JUDICIAL IDENTIFICATIONS OF THE APPELLANT

On appeal the appellant challenges the in-court identifications of him by the clerk, the telephone operator and the manager on three grounds: (1) they were tainted by extra-judicial photographic identifications; (2) the conflicting descriptions of the appellant in the testimony of the witnesses; and (3) the courtroom procedure at which the identifications were made.

In *Smith v. State,* 6 Md. App. 59, we discussed the procedure upon challenge of evidence of identification. We observed that such challenge may be made by a motion to exclude or suppress such evidence made before or during trial or by an objection to the evidence when it is offered (or as soon thereafter as the objection to its admissibility shall have become apparent), citing Md. Rules 725 and 522. Rule 725b includes a provision that failure to present any such defense or objection as therein provided shall constitute a waiver thereof and Rule 522d2, applicable to criminal causes by Rule 725f, provides that if objection is not made as therein provided, the objection shall be treated as waived. From the record before us no motion to exclude or suppress was made nor was objection made to the admission of in-court identifications.[2] Generally, State procedural requirements to raise or preserve a question may still be respected even in the case of an alleged violation of the Fourteenth Amendment. See *Gaudio and Bucci v. State,* 1 Md. App. 455, 461 ; *Mapp v. Ohio,* 367 U. S. 643. Thus the precise question of the admissibility of the in-court identifications here is not properly before us and we would not ordinarily decide it. Md. Rule 1085. However, as the question is presented to us in an unusual posture, we shall consider it within the qualifications expressed in Rule 1085.

---

**2.** Counsel for the appellant on appeal did not represent him at the trial below.

*The Extra-Judicial Identifications by Photograph*

During cross-examination of the clerk, he having identified the appellant in court on direct examination as one of the robbers, he was asked if he had ever seen a photograph of the appellant. Objection was made by the State on the ground that it was not brought out on direct examination. The transcript shows the following colloquy at the bench:

> "MR. DIGMAN: (Assistant State's Attorney) May it please the Court, Your Honor, the State objects to this examination in regards to the witness seeing photographs of the Defendant. This was not on direct examination and I am quite well aware of the wide latitude on cross-examination. And I proffer to the Court this was not on direct examination and he should not at this time be allowed to collaterally inquire.
>
> THE COURT: What is the purpose of this question?
>
> MR. GALLAGHER: (defense counsel) If the court please, I think we are entitled to know whether or not he has been shown prior to this time photographs of this particular Defendant and allowed to have the jury decide whether or not this sighting or observation of a photograph could or would influence this identification of this particular person.
>
> THE COURT: Do you intend to introduce any evidence concerning identification by a photograph?
>
> MR. DIGMAN: No, sir.
>
> MR. SMITH (defense counsel) If the Court please, identification is a very important part of the defendant's case. I think we are entitled to know how this man is able to identify him if he saw a photograph prior to this; that would certainly—
>
> THE COURT: You can certainly use him as your own witness. But since there is nothing in evidence on direct examination determining identification by a photograph, this would not be proper at this time. But, however, I will be glad to have

> him remain so that you may use him as your wit-
> ness if you like.
>
> MR. DIGMAN: The State would further proffer that
> the use of the photographs are not in evidence as
> the Court has so held. But further, that the iden-
> tification is based upon an eyewitness identifica-
> tion only and that is sufficient at the present time
> to proceed further.
>
> THE COURT: That is why I sustained the objec-
> tion."

During the cross-examination of the telephone operator, she having identified the appellant in court on direct examination as one of the robbers, she was asked, "Now, were you shown a photograph of Bailey (the appellant)." The State objected and the objection was sustained by the court without comment. Only two witnesses were called by the defense on behalf of the appellant. The clerk testified that a detective, on a date he did not remember, but within the last month, had shown him photographs of the appellant. On cross-examination the State brought out that he had been shown the photographs on more than one occasion. Asked how many photographs he was shown he said that there were several, two or three, "I don't remember off-hand." They were of "the same type of people, colored race" and there was no "intimation in any way to indicate which one of the photographs (he) should pick out." The transcript then shows the following questions by the State and answers by the witness:

> "Q. Did, in fact, I not have you in my office this morn-
> ing and show you almost six or eight photographs
> and ask you to pick the one out, if you could pick
> the Defendant out?
>
> A. Yes, sir.
>
> Q. And in addition to that, did you not also have an
> interview with the detective in regards to deter-
> mining whether you could, whether you did iden-
> tify the Defendant's picture?
>
> A. Yes, sir."

The defense then called the telephone operator. She said un-

til the day of trial she had not seen the appellant since the robbery. She was then asked if she had seen photographs of him and answered, "I was shown photographs of six or seven different people and picked his out of the bunch." On cross-examination the State brought out that she had been shown photographs on more than one occasion, that one of the times was the morning of the trial in the office of the Assistant State's Attorney, that she believed there were nine photographs "of like people" then shown her, that the Assistant State's Attorney did not in any way indicate to her which one to pick out and that the "front of the photographs" that she inspected were "not marked in any particular way." The defense rested. Motions for judgment of acquittal as to counts on which acquittal had not been directed by the court on motion at the close of the evidence offered by the State were made and denied. There was no motion to exclude the testimony as to the in-court identifications and the only instructions requested by defense counsel were for "the usual instructions * * * for instance, he did not take the witness stand, no inference is to be drawn from the fact that he did not testify * * * And, of course, the usual instructions about burden of proof." The court included in its charge the burden of the State to prove the guilt of the appellant beyond a reasonable doubt and that he came into court clothed with innocence. There were no instructions directly on the matter of the appellant's identification by the State's witnesses. The record shows no objection to the charge. Arguments of counsel were not transcribed.

In *Smith v. State, supra,* we fully discussed the rules as to the admissibility of challenged evidence of both judicial and extra-judicial identification by personal confrontation and by the viewing of photographs as they existed in this State prior to the *Wade—Gilbert—Stovall* [3] trilogy of opinions and the opinion in *Simmons v. United States,* 390 U. S. 377 and as they were affected by those opinions. As to initial identification by photograph we quoted the Supreme Court in *Simmons* :

"We are unwilling to prohibit its employment, either

---

**3.** *United States v. Wade,* 388 U. S. 218, *Gilbert v. State of California,* 388 U. S. 263, *Stovall v. Denno,* 388 U. S. 293.

in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in Stovall v. Denno, 38 U. S. 293, 301-302, 87 S. Ct. 1967, 1972-1973, and with decisions of other courts on the question of identification by photograph." 390 U. S. at 384.

We held:

"[W]hen it is shown that a pre-trial identification by photograph, on the totality of the circumstances surrounding it, was so unnecessarily suggestive as to give rise to a very substantial likelihood of irreparable misidentification, the admission of evidence of such identification or an in-court identification, as substantive evidence of identity, is determined, as when a pre-trial confrontation is shown to be illegal by denial of due process of law [4] pursuant to the exclusionary rules of *Wade* and *Gilbert*." [5] *Smith v. State, supra.*

---

**4.** As distinguished from illegality of a personal confrontation by denial of the right to counsel. A viewing of photographs by a witness is not rendered illegal by the absence of counsel for the accused as there is no constitutional requirement that counsel be then present. *Barnes v. State,* 5 Md. App. 144.

**5.** The exclusionary rules referred to as set forth in *Smith* are:

1) The in-court identifications of the accused by witnesses at such confrontations are to be excluded unless the prosecution establishes "by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the confrontation identifications," and that is that they had an "independent source."

2) Evidence that witnesses identified the accused at such confrontations is *per se* to be excluded.

3) The admission of evidence, to be excluded under 1) and

In the instant case pre-trial personal confrontation by identifying witnesses was not involved nor was evidence offered by the State of a pre-trial identification on the substantive issue of guilt or innocence. It relied on the in-court identifications to show the criminal agency of the appellant. The practical effect of the failure to challenge the in-court identifications was to render them admissible at the trial. This enabled the State to put the identifications before the jury as would have been the case had they been challenged below, evidence on that issue had been received out of the presence of the jury and the court had found that they were admissible. Thus the exclusionary rules to be applied when a pre-trial identification is held to be illegal did not apply at the trial. Therefore, as we said in *Smith v. State, supra,* it was not the obligation of the State to put before the jury evidence of the pre-trial identifications.[6] However, we think from the record that the lower court could properly have found the in-court identifications to be admissible even if they had been challenged on the ground of the viewing of photographs. There was no evidence that the manager had viewed photographs prior to trial or had made an extra-judicial identification. The evidence with respect to the pre-trial identifications by photograph by the clerk and the telephone operator did not establish, on the totality of the circumstances surrounding them, that they were so unnecessarily suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Although it appeared that the witnesses had been shown photographs by the police at some time after the crime there was no showing or allegation that the procedure then followed was in any way improper. Nor do we see anything improper in the State or defense counsel discussing the case with the State's witnesses in a fair manner, even on the morning of the trial, to be aware of the nature of their testimony. The showing

2) is prejudicial error unless, in any event, its introduction was harmless error beyond a reasonable doubt, applying *Chapman v. State of California,* 386 U. S. 18.
("Such confrontations" as stated in (1) and (2) mean illegal confrontations.)

**6.** Improper suppression of evidence by the State is, of course, another question, not here before us.

of the photographs to the witnesses, in the circumstances the Assistant State's Attorney did here, was not *per se* improper. And from the testimony of the witnesses, above summarized or set out, the lower court could have properly found the viewing of the photographs, on the totality of the circumstances, was not in fact so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Compare *Rath v. State,* 3 Md. App. 721. Therefore the pre-trial identification by photographs did not taint the in-court identifications.

As we believe that the pre-trial identifications were not illegal, even had the in-court identifications been challenged below, they were properly admissible. But when admissible "[t]his is not to say that the defendant cannot cross-examine the State's witness making an in-court identification at the trial of the general issue, if he chooses, so as to bring out the circumstances surrounding a pre-trial identification by that witness even though the court had held the procedure by which the pre-trial identification was made to be illegal, nor does it prevent the defendant from introducing evidence on the matter as part of his case. Such evidence so elicited by the defendant is proper as affecting the weight of the identification evidence produced by the State and the credibility of the identifying witness, matters for the trier of fact." *Smith v. State, supra.* In the instant case the lower court erred in precluding cross-examination of the clerk and the telephone operator as to the prior identification of the appellant by each of them on the viewing of photographs. But not every error compels reversal of a judgment. The obvious trial tactic of the defense was to bring to the attention of the jury the pre-trial viewing of the photographs by the identifying witnesses as affecting the weight of in-court identifications and the credibility of the witnesses. The appellant was afforded this opportunity at the trial when it called the clerk and the telephone operator and it does not appear that he was denied or deterred in calling any other witness he desired to testify on the matter. The transcript shows that the trial court gave the appellant full latitude in exploring the matter on direct examination, even as to leading questions, and on cross-examination the State brought out facts as to the photographic identifica-

tion procedure in even greater detail. The Supreme Court recognized in *Chapman v. State of California,* 386 U. S. 18, that states have harmless-error statutes or rules. It said, at 22, that these rules "serve a very useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial." It concluded that "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." See *Fahy v. State of Connecticut,* 375 U. S. 85. The opinions of this State have followed a harmless-error rule.[7] We hold that the restriction of cross-examination as to the pre-trial identification by photographs in the circumstances here was harmless error. We feel that there was no reasonable possibility that it might have contributed to the conviction.[8]

### The Identifications by the Witnesses

The appellant argues that the "chances for misidentification are increased when the witness is a victim." It is established that a victim's positive identification alone, if believed, is sufficient to sustain a conviction. *Wilkins v. State,* 5 Md. App. 8. He also points out discrepancies in the descriptions of the appellant given by the three State's witnesses. The testimony of each witness, as given by that witness, was not so contradictory as to have no probative value. *Eley v. State,* 4 Md. App. 230; *Poff v. State,* 3 Md. App. 289. Taking the testimony of the witnesses as a whole, contradictions in describing clothing worn by the appellant went to the weight of the testimony and the credibility of the witnesses as did the opportunity to observe the

---

7. See, for example, *Jones v. State,* 4 Md. App. 616; *Brown v. State,* 4 Md. App. 612; *Gunn v. State,* 4 Md. App. 379; *Sparkman v. State,* 3 Md. App. 527; *Grice v. State,* 2 Md. App. 482; *Lewis v. State,* 2 Md. App. 318, and cases cited in those opinions. cf. *Smithson v. State,* 5 Md. App. 378.

8. We do not think the error here was a federal constitutional one, as is for example, the admission of challenged evidence of an illegal pre-trial identification. As to constitutional error the rule is that it must be found to be harmless beyond a reasonable doubt. *Chapman v. California, supra,* at 24.

appellant during the commission of the crime and the circumstances under which the observations were made. *Borman v. State,* 1 Md. App. 276; *Logan v. State,* 1 Md. App. 213. These are matters for the trier of fact. *Rozzell v. State,* 5 Md. App. 167; *Jones v. State,* 5 Md. App. 180.

*The Courtroom Procedure*

The appellant complains that the witnesses were present in the courtroom when the case was called by the clerk and that they saw the appellant with his counsel seated at the trial table, "the only Negroe seated at the trial table." He argues that "it is hard to imagine a situation more clearly conveying the suggestion to the witness that the one presented is believed to be guilty by the police," citing *United States v. Wade, supra.* But confrontation of an accused by a witness at an illegal lineup is in no way comparable to the appearance in court of an accused for trial. See *Tyler v. State,* 5 Md. App. 265. Nor can the appellant escape the fact that he was indicted for the crimes and was being tried thereon. He is nevertheless cloaked with the presumption of innocence which may be adequately explained, as was here, by the court's instructions to the jury. We note that the privilege against self-incrimination does not extend to compulsion to appear in court. *Schmerber v. State of California,* 384 U. S. 757, 764. The appellant also complains that the in-court identifications were made while he was sitting at the defendant's trial table—"a Negroe man, sitting with white counsel." This again goes to the weight of the identification and could have been argued to the jury. Moreover we think it within the court's discretion, had it been properly requested, to have arranged that until the in-court identifications were made, the appellant would be seated in the courtroom in circumstances to obviate the situation of which the appellant now complains.

We hold that there was no error in the admission of the in-court identifications.

## THE PARTICIPATION BY THE COURT IN THE DIRECT EXAMINATION OF STATE'S WITNESSES

The appellant concedes that "it is settled law that the trial court has the right to examine a witness in order to elicit in-

formation which will help the jury to determine the issue" and he does not suggest that the questions of which he now complains were objectionable in themselves. The thrust of his contention is that there was such an active particiption by the court in questioning two of the State's witnesses as to prejudice him. No objection was made below and the matter is not properly before us. Md. Rule 1085. In any event the record does not give us any reason to believe that in asking the questions referred to the court exceeded the limits of proper judicial discretion. Its inquiries were entirely pertinent, and it had a perfect right to interrogate the witness on its own motion. In exercising this right it does not appear to have manifested an opinion adverse to the appellant or to the defense upon which he sought to rely. *Rickards v. State*, 129 Md. 184, 190. We find no reversible error.

## COMPETENCY OF TRIAL COUNSEL

The appellant contends that his trial counsel failed to protect his rights by disregarding his "specific instructions" to call certain alibi witnesses. The point was not raised and decided below and is not properly before us. Md. Rule 1085. We have repeatedly invoked this rule with respect to competency of counsel on direct appeal and see nothing in the record to cause us to consider the point here. See *Turner v. State*, 5 Md. App. 584, 586-587.

## THE SUFFICIENCY OF THE EVIDENCE

The appellant contends that the court erred in denying his motions for judgment of acquittal at the close of all the evidence. Applying the test as stated in *Williams v. State*, 5 Md. App. 450, 459, we have no difficulty in determining that the evidence before the court, as hereinbefore summarized, was sufficient in law for it to be properly submitted to the jury. There was no error in the denial of the motions for judgment of acquittal.

## THE SENTENCE

The appellant contends that the terms of imprisonment imposed constituted cruel and unusual punishment. He urges that the loot from the robbery had small monetary value and he had

no previous record. The sentences were within the limits authorized by the laws of this State and there is nothing to show that they were imposed by passion, ill-will or any other unworthy motive. See *Charles v. State,* 1 Md. App. 222; *Fisher v. State,* 1 Md. App. 505; *Cooper v. State,* 5 Md. App. 638. There is no merit to the contention.

*Judgments affirmed.*